**In re Reverend Clovis Carl GREEN, Jr.**

**No. 81–8014.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 8, 1981.

Clovis Carl Green, Jr., pro se.

On Motions for Leave to Appeal In Forma Pauperis

Before WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

The Reverend Clovis Carl Green, Jr., seeks leave to appeal *in forma pauperis* two orders of the district court entered March 10 and June 12, 1981.[1] The first order

1. *In re*: Reverend Clovis Carl Green, Jr., Misc. No. 80–0223 (D.D.C. March 10, June 12, 1981). Pursuant to this court's amended order of March 6, 1981, in No. 80–1760, these motions for leave to appeal *in forma pauperis* were lodged, initially reviewed by the First Deputy Clerk, and thereafter referred to the motions panel for appropriate disposition.

Green seeks to have this court review is the district court's denial of reconsideration of an order entered September 3, 1980, directing the clerk of the district court not to file any further papers submitted by Green.[2] The second order amended the first to provide that Green would be permitted to file claims in the district court only upon payment of all filing fees plus a $100 cash deposit as security for costs. Because we hold that these orders violate Green's statutory and constitutional rights of access to the courts, we grant the motions to proceed on appeal *in forma pauperis* and *sua sponte* vacate the district court's amended order of June 12, 1981. We are in complete agreement, however, with the conclusion reached by the district court, and the other federal courts Green has besieged, that Green's pattern of repetitive, frivolous and malicious filings constitutes a flagrant and serious abuse of the judicial process and must come to a stop. The injunctive order we direct the district court to enter today is designed

to curb this abuse while observing Green's constitutional rights of access to the courts.

## I. BACKGROUND

Clovis Carl Green is in all likelihood the most prolific prisoner litigant in recorded history. In the last decade Green has filed between 600 and 700 complaints in federal and state courts.[3] His litigious sojourns throughout the nation's prison systems have been recounted and catalogued by many other courts.[4] It will suffice for present purposes to observe that the vast majority of these complaints have concerned the terms and conditions of Green's confinement in state and federal prisons, and more specifically, the activities of the Human Awareness Universal Life Church, of which Green is founder and sole reverend.[5]

Green apparently is not a wealthy man. The sheer cost in terms of time and money of submitting hundreds of complaints and

---

**2.** Green did not notice an appeal of the September 3 order.

**3.** *See Green v. Garrott*, 71 F.R.D. 680 (W.D.Mo. 1976) (listing over 200 cases); *Green v. Camper*, 477 F.Supp. 758, 759–68 (W.D.Mo.1979) (listing over 500 cases); *Green v. Arnold*, 512 F.Supp. 560 (W.D.Tex.1981) (adding to list).

**4.** Green has prompted at least twenty-six published opinions. For a summary of Green's history of abuse, see, *e.g., Green v. Arnold*, 512 F.Supp. 560 (W.D.Tex.1981); *Green v. Camper*, 477 F.Supp. 758 (W.D.Mo.1979).

**5.** Although Green states that many other inmates are members of this religion, the courts have understandably been dubious of this claim. Among the tenets of the Church are the following: Green is the only one who may speak for the Church in litigation. No member may file any litigation without Green's consent. *Green v. Camper*, 477 F.Supp. at 770 n.6. Members must be allowed to wear beards and grow hair longer than is presently allowed in prison, have regular conjugal visits, hold Saturday services, hold banquets on religious holidays, and distribute the Church newspaper *Truth* to fellow inmates. *Green v. White*, 605 F.2d 376, 377 (8th Cir. 1979), *cert. denied*, 444 U.S. 1083, 1093, 100 S.Ct. 1038, 1060, 62 L.Ed.2d 767, 782 (1980). When the IRS refused to grant the Church tax-exempt status because it is not incorporated and because it is without a written constitution, Green filed suit in the district court here, alleging that he did not have

sufficient funds to incorporate the Church and that a written constitution was contrary to the tenets of the Church. The district court dismissed this and a companion claim under § 1915(d). D.D.C. Civ. Action Nos. 78–1354, 78–1355. This court denied leave to proceed on appeal *in forma pauperis*. D.C.Cir. Nos. 78–8056, 78–8062 (December 18, 1978). Green's other attempts to seek some sort of legal recognition of the Church have proven equally unavailing. *See, e.g., Green v. White*, 589 F.2d 378 (8th Cir. 1979) (Green sought declaration that the Church is a legitimate religion), *cert. denied*, 441 U.S. 925, 99 S.Ct. 2038, 60 L.Ed.2d 400 (1979); *Green v. Wilson*, 517 F.Supp. 332 (E.D.Ky.1981) (motion for leave to file petitions to post Church notices in Kentucky state prisons and all federal prisons denied; complaint dismissed as repetitive); *Green v. Arnold*, 512 F.Supp. 650, 651 & n.6 (W.D.Tex.1981) (noting many Church-related filings in Western District of Texas).

Nearly a decade ago, Green filed a class action here on behalf of all federal prisoners who are members of the Church of the New Song allegedly deprived of the freedom to practice their religion while in prison. D.D.C. Civ. Action No. 154–73. The Church of the New Song appears to be a forerunner to the Human Awareness Universal Life Church. *See Theriault v. Carlson*, 339 F.Supp. 375, 377 (N.D.Ga. 1972) (class action brought on behalf of members of "Church of the New Song of *Universal Life*").

petitions to prison authorities, district courts and appellate courts would generally be prohibitive. But Green has had the time (he has at all relevant times been incarcerated in prison) and he has not needed the funds. Section 1915(a) of Title 28 has allowed him to proceed in the district court *in forma pauperis* upon a showing by affidavit of inability to afford the usual fees or costs.[6]

Some of Green's filings have been found by courts to be malicious and therefore have been dismissed under 28 U.S.C. § 1915(d).[7] Many are patently frivolous and have been properly dismissed for that reason. Most of Green's complaints are, as might be expected, duplicative of prior frivolous ones and therefore have not been entertained at all by the courts. Furthermore, it appears that such repetitive filings are a result of neither inadvertence nor forgetfulness. Rather, Green has deliberately flooded the courts with his complaints and petitions (and encouraged other prisoner-churchmembers to do the same), in a vain attempt to gain his release from prison.[8]

Ironically, Green appears to be his own worst enemy. Green's ten-year sentence for rape, imposed by the Jackson County, Missouri circuit court in 1975, apparently was completed in 1980. *United States v. Green*, 630 F.2d 566, 567 (8th Cir.), *cert. denied*, 449 U.S. 904, 101 S.Ct. 277, 66 L.Ed.2d 135 (1980). Although he has had prior scrapes with the law,[9] Green would be a free man today were it not for the several sentences the district court for the Western District of Missouri imposed for contempt convictions in 1978 and 1979 stemming from Green's writ-writing and jailhouse lawyering "on behalf of" his fellow inmates.[10] If

---

**6.** Section 1915(a) states, in pertinent part:

> Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor.

**7.** Section 1915(d) permits a court to "dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

**8.** Under the "sponsorship" of the Church, Green founded the Prisoners' Law Collective. The major goal of the PLC (and therefore the Church) is to flood the courts with prisoner civil rights complaints. *See Green v. Camper*, 477 F.Supp. at 770 (quoting Green: "Hopefully, the number of court suits will double in the next six months. If possible, we would like to have 4 or 5 times as many court actions filed in the next years as has been filed in the past!"). At some point, Green believes, the courts will "cry uncle" and the prisoners (read: Green) will obtain early release in return for a promise to put away pen and paper. Green submitted to the district court in this case a recent letter to Judge Clark of the beleaguered Western District of Missouri, in which Green candidly speaks to the judge of his proposals:

> When I appeared at an evidentiary hearing before Judge Nangle in St. Louis, Missouri, I offered to dismiss all pending court actions against the federal and state prisons in return for my freedom.

> However, that settlement will no longer be acceptable to me, so I have another proposal to offer, to settle the pending court cases....

> Now my alternative proposal is simply this: (a) you agree to reduce my prison sentence to 16 months in federal prison, and an additional 6 months to be spent in a halfway house ....

> In return, I will agree [to drop] all 50 other claims—except the H.A.L. Church issue [Green states he has appeals pending in *seven* circuits concerning "the Church issue"]—and will not file any additional court suits against the federal prisons.

**9.** *See In the Matter of the Alleged Contumacious Conduct of Clovis Carl Green, Jr.*, 586 F.2d 1247, 1249 (8th Cir. 1978) (stating Green's record to be "extensive") *cert. denied*, 440 U.S. 922, 99 S.Ct. 1249, 59 L.Ed.2d 475 (1979); *United States v. Green*, 483 F.2d 469 (10th Cir.) (conviction in district court of Kansas of two counts of violating Dyer Act upheld), *cert. denied*, 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973).

**10.** In *Green v. Wyrick*, 428 F.Supp. 732 (W.D. Mo.1976), Green filed a petition for a writ of habeas corpus challenging his confinement. The warden of the Missouri state penitentiary moved for extensive injunctive relief against Green, seeking to bar Green from filing any complaints, motions, petitions, or pleadings (1) challenging his conviction; (2) challenging his confinement; or (3) purporting to represent another prisoner. The district court denied without discussion the first two requests for injunctive relief, 428 F.Supp. at 744 n.20, but

he does not abandon "his desire to prevent the federal court from being able to process its docket,"[11] he may well end up with still more jail time for his contumely.

Several circuits plagued by Green's indefatigable litigiousness have resorted to extraordinary and novel remedies to halt this blatant abuse of the judicial process. *See Green v. Carlson*, 649 F.2d 285, 286 (5th Cir. 1981) (threat of contempt sanction if Green's pattern should continue), *cert. denied*, —— U.S. ——, 102 S.Ct. 646, 70 L.Ed.2d 623 (1981); *Green v. Martinez*, Nos. 81–9028 *et al.* (5th Cir. April 27, 1981) (order barring the filing of complaints or petitions accompanied by an application to proceed *in forma pauperis* unless Green specifically alleges "constitutional deprivation by reason of physical harm or threat to Green's person"), *cert. denied*, —— U.S. ——, 102 S.Ct. 299, 70 L.Ed.2d 146 (1981); *Green v. White*, 616 F.2d 1054, 1055 (8th Cir. 1980) (same, plus order requiring (1) verification of each complaint and petition and (2) inclusion in every pleading of a list of all causes previously filed on the same, a similar or a related cause of action); *In re Clovis Carl Green*, 598 F.2d 1126, 1128 (8th Cir. 1979) (*en banc*) (order directing clerk not to file any mandamus petitions submitted by Green challenging the regularity of district court proceedings).

This circuit unfortunately has not escaped Green's attention. Green has filed thirty-eight complaints in the district court, eighteen of these in one year (1980).[12] The most recent controversy grows out of a class action Green filed in the district court in April 1980 alleging harassment by prison officials of the Human Life Awareness Church and deprivation of constitutional rights. Specifically, however, Green injected into the complaint his own particular grievance, protesting his frequent transfer among federal prisons as an alleged effort to deprive him of access to the courts. The district court ordered the suit transferred to the Northern District of Georgia. D.D.C. Civ. Action No. 80–1039. Green sought re-

---

granted the third. The court detailed a sorry history of Green's writ-writing behavior on behalf of other prisoners. The court noted Green's admission that he had filed "hundreds" of lawsuits for fellow inmates, but found that Green had (1) consistently and deliberately failed to follow court procedures; (2) "made a business of rendering legal assistance by charging other inmates for services rendered"; (3) used this writ-writing to advance his own grievances and ideas instead of those of his fellow inmates for whom he was to render legal assistance; (4) intentionally misled several inmates as to the necessary disclosure of income and assets on the *in forma pauperis* form. The district court permanently enjoined Green from filing any papers in the Western District of Missouri on behalf of another inmate incarcerated within the Missouri penal system concerning the inmate's conviction or confinement, and enjoined Green from acting as writ-writer or jailhouse lawyer for any other inmate within the Missouri penal system. 428 F.Supp. at 743–44.

Two years later the district court found Green guilty of three counts of contempt of the 1976 injunctive order, and sentenced him to five months imprisonment on each count, the sentences to run concurrently with each other, but consecutively to any sentences Green was presently serving. The Eighth Circuit affirmed Green's conviction and sentence. *In the Matter of the Alleged Contumacious Conduct of Clovis Carl Green, Jr.*, 586 F.2d 1247 (8th Cir. 1978), *cert. denied*, 440 U.S. 922, 99 S.Ct. 1249, 59 L.Ed.2d 475 (1979).

Despite the outstanding injunction and three-count conviction for contempt, Green persisted. Of course, the injunction did not reach outside the Western District of Missouri. A district court found that Green "continues to engage in writ writing in other jurisdictions." *Green v. Camper*, 477 F.Supp. at 768 n.3. But Green continued to violate the terms of the 1976 injunction. On May 23, 1979, Green was convicted on five counts of contempt. The district court, demonstrably impatient with Green's stubborn refusal to obey the court's injunction, sentenced Green to *two years imprisonment on each count*, with the sentences to run consecutively and only after Green finished his present five-month sentences for contempt imposed in 1978. On appeal, the Eighth Circuit affirmed the convictions but modified the sentence. *United States v. Green*, 630 F.2d 566 (8th Cir.), *cert. denied*, 449 U.S. 904, 101 S.Ct. 277, 66 L.Ed.2d 135 (1980). The court reduced the sentence on each count to five months to run consecutively to each other and to the previously imposed five-month sentences.

**11.** *Green v. Camper*, 477 F.Supp. at 770–71.

**12.** In addition to his many appeals to this court Green has frequently moved in this court for leave to file a petition for writ of mandamus *in forma pauperis*.

view of this order by way of mandamus.[13] His motion for leave to file such a petition *in forma pauperis* was granted by a panel of this court. D.C.Cir. No. 80–8013 (May 19, 1980). Thereafter, the United States Attorney responded to the mandamus petition on behalf of the district court. The government's response brought Green's litigious history to the attention of the panel for the first time. This court denied Green's petition and ordered "that the Clerk is instructed not to file any further papers submitted by this litigant." D.C.Cir. No. 80–1760 (August 29, 1980).

In the interim the district court had dismissed twelve more complaints filed by Green. The district court issued a short opinion citing Green's scorecard of abuse and the efforts of other courts to curb it. *Green v. United States District Court*, 494 F.Supp. 1037 (D.D.C.1980). Green appealed only the first five dismissals.[14] Pursuant to this court's August 29 order, the clerk terminated the dockets in these five unresolved appeals.[15] *See* D.C.Cir. No. 80–8023 (Clerk's order of September 9, 1980).

Following this court's prophylactic order of August 29, 1980, the district court on September 3 opened a new docket, Misc. No. 80–0223, and issued an identical order prohibiting the filing of any papers submitted by Green. Green did not appeal this order. The Supreme Court declined to review by way of certiorari both this court's August 29 order, 449 U.S. 904, 101 S.Ct. 277, 66 L.Ed.2d 135 (No. 80–5415, October 14, 1980), and the September 9 clerk's order terminating five dockets, 449 U.S. 1064, 101 S.Ct. 790, 66 L.Ed.2d 607 (1980).

On March 9, 1981, Green submitted to this court a motion for reconsideration of the August 29 order. One day later, Green moved in the district court for similar reconsideration of the district court's September 3 order. The district court denied this latter request March 26. On April 10, Green sought leave to appeal *in forma pauperis* this denial of reconsideration. This court filed Green's motion and assigned it a miscellaneous number, D.C.Cir. No. 80–8014.

In the interim this court had amended its August 29 order in No. 80–1760. As amended by order of March 6, 1981, this court instructed the clerk of this court

> to review all pleadings and other documents submitted by this litigant upon receipt and to file and enter same on the docket, unless it appears that the tendered materials are repetitive or frivolous on their face in which case they are to be brought to the attention of the sitting motions division of this Court for appropriate summary disposition.[16]

The district court, now without the support of this court's "no further papers" order, filed Green's motion for modification of the September 3 order on June 12 in Misc. No. 80–0223 and amended its order to read that

> Petitioner is permitted to file actions in this court provided he first pays all filing fees and for each action filed makes a cash deposit of $100 with the Clerk as security for costs.

Green noticed his appeal from this order on July 6.[17] In his *pro se* motion for leave to proceed on appeal *in forma pauperis*, Green charges, citing only *Bounds v. Smith*, 430

---

**13.** Green also sought review by way of appeal, D.C.Cir. No. 80–1658, but this court *sua sponte* dismissed the appeal as premature on August 20, 1980. The Supreme Court denied Green's application for certiorari, 449 U.S. 904, 101 S.Ct. 277, 66 L.Ed.2d 135 (No. 80–5314, October 14, 1980).

**14.** D.D.C. Civ. Action Nos. 80–1871, 80–1995, 80–1996, 80–1997, 80–1998. Green did not appeal the other seven dismissals. D.D.C. Civ. Action Nos. 80–2080, 80–2081, 80–2082, 80–2083, 80–2084, 80–2085, 80–2086.

**15.** D.C.Cir. Nos. 80–2051 (terminated September 9, 1980), 80–2012 (same), 80–2022 (same), 80–2029 (same), 80–2021 (terminated October 20, 1980).

**16.** This court filed and denied Green's motion to reconsider, April 3, 1981. No further papers have been filed in No. 80–1760.

**17.** After the district court denied Green's application to proceed on appeal *in forma pauperis* on July 10, this court on July 23 lodged Green's motion to the same effect made in this court.

U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), that the district court's orders deprive him of his constitutional right of access to the court. Thus, these appeals seek judicial review of the constitutionality of the efforts of the district court to rid this circuit of the Reverend Clovis Carl Green, Jr. Ironically, these appeals *do* raise nonfrivolous issues concerning the scope of Green's right of access to federal court. We thus must give Green still another day in court.

## II. DISCUSSION

### A. *The right of access to the courts.*

The Supreme Court recently stated, "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Indeed, the Eighth Circuit, in *In re Clovis Carl Green*, 598 F.2d 1126, 1127 (8th Cir. 1979) (*en banc*), conceded that "[i]t is axiomatic that no petitioner or person shall ever be denied his right to the processes of the court." That right of access to the courts, however, is neither absolute nor unconditional.

The scope of such a right depends in part on the nature of the suit. Although the right of access is most clearly established in cases involving a direct appeal from a criminal conviction, *Douglas v. California*, 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963) (indigent criminal defendant must be provided with appointed counsel at state expense); *Burns v. Ohio*, 360 U.S. 252, 258, 79 S.Ct. 1164, 1168–69, 3 L.Ed.2d 1209 (1959) (filing fee as a prerequisite for filing direct appeal of an indigent criminal defendant held unconstitutional); *Griffin v. Illinois*, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956) (trial transcript must be provided at state expense), the right of access extends to collateral review of criminal convictions, *see, e.g., Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) (filing fee for habeas corpus petition unconstitutional as applied to indigent), and

to civil cases involving a fundamental constitutional right, *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (filing fee for divorce unconstitutional as required of indigent); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to obtain legal assistance to prisoner in prosecuting actions under 42 U.S.C. § 1983).[18]

Here, of course, no state or federal statute operates to deny Green access to the district court, whatever the nature of his claim. In fact, federal law specifically permits a person to proceed in the district court *in forma pauperis*, without prepayment of fees and costs, providing only that such person show by affidavit that he is unable to afford such fees or costs and that the claim or defense is neither frivolous nor malicious. 28 U.S.C. § 1915(a), (d). The district court's June 12 order, however, suspends the operation of subsection (a) of section 1915. The order conditions the filing of an action upon the full payment of the filing fee plus the payment of $100 as security for costs. In the Supreme Court cases canvassed above, the major inquiries concerned the nature of the indigent litigant's claim and the extent to which the challenged restriction or barrier (financial or otherwise) deprived that litigant of "meaningful access" to the courts. Here, the court's order on its face is unlimited as to the nature of claims (the order appears to be equally applicable to civil complaints and habeas petitions, and to constitutional and non-constitutional claims) and a total barrier (no papers submitted by Green will be considered in the court without the full payment required by the order).

Although the district court expressly found that Green had "flagrantly abused the judicial process"—an observation not open to doubt—the court has in effect entered a *conclusive* presumption that anything Green submits to the district court will be duplicative, frivolous or malicious. While methods that other courts have em-

---

**18.** Conversely, where there is no fundamental right at stake, the court has upheld financial barriers to suit. *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (filing fee for voluntary discharge in bankruptcy).

ployed to deter Green from continuing to harass them amount in effect to *rebuttable* presumptions that Green is submitting papers in bad faith, those orders have left the courthouse door ajar, if only slightly.

■ The determination of a court whether to allow one to proceed *in forma pauperis* must be made separately in every case. A district court cannot read out of § 1915(a) the discretion Congress placed with the district courts in any "suit, action or proceeding." Although a reviewing court will seldom if ever dictate to the district court the *manner* in which the latter must exercise its discretion, it can and must compel the court to exercise it. *See Steffler v. United States*, 319 U.S. 38, 63 S.Ct. 948, 87 L.Ed. 488 (1943). Thus, any order that does not allow a district court the appropriate exercise of discretion under § 1915 is invalid. We therefore hold that the district court's preclusive order of June 12 requiring the full payment of the necessary filing fee and a cash security deposit of $100 violates 28 U.S.C. § 1915(a).[19]

■ Apart from the necessity of a case-by-case determination of poverty, frivolity or maliciousness, a court may impose conditions upon a litigant—even onerous conditions—so long as they assist the court in making such determinations, and so long as they are, taken together, not so burdensome as to deny the litigant meaningful access to the courts. In erecting a potentially prohibitive financial barrier that encompasses all civil suits including habeas corpus petitions as well as those involving a fundamental constitutional right, the district court's order fails both of these requirements. First, the order does not purport to be and in fact is not geared to discerning whether each claim presents a new nonfrivolous issue. It appears that the district court and other courts that have interposed financial

barriers as a method to deter Green assume not that Green will choose to file only those suits he truly believes are meritorious, but that he will not be able to meet the required filing fee. The court's June 12 order therefore is simply punitive and is not designed to aid the section 1915 determinations. Second, because Green *cannot* comply with the court's order if he is without the necessary funds, the order effectively denies Green any and all access to the district court. Even a new, nonfrivolous claim submitted in good faith would not be heard if Green could not meet the filing fee and cash deposit. This underscores the general inappropriateness of withdrawing the *in forma pauperis* privilege as a means to curtail the arrant abuse of that privilege and of the judicial process. On the one hand, Green is totally free to flood the courts with paper provided that he pays the going rate: orders erecting financial barriers are only as effective as the litigant is truly impoverished. On the other hand, these restrictions are clumsily overinclusive: if Green does not have the money to file a frivolous claim, he also does not have the money to file a legitimate one.

We hold, then, that the district court's amended order unduly impairs Green's constitutional right of access to the courts.

### B. *Guidance to the district court.*

We sympathize with the frustration experienced by the district court here as well as by other district courts deluged with Green's parade of pleadings, petitions, and other papers.[20] Faced with just one litigant who has a fanatical desire to flood the courts—a litigant armed with materials paid for by the state, an *in forma pauperis* statute, and the United States Constitution—these district courts have had to respond with determination and imagination.

---

19. The requirement of posting $100 security for costs *in every action* appears to be outside the district court's authority. *See* 6 Moore's Federal Practice ¶ 54.73, at 1451 (2d ed. 1981) (no requirement to secure costs unless required by statute, court rule, or court order in the exercise of discretion *as applied to the particular case at hand*).

20. We note that the district court's original order of September 3, 1980, directing the clerk not to file any further papers submitted by Green, was entered in reliance on this court's August 29 order (later amended) to the same effect.

The singular nature of Clovis Carl Green's abuse of the judicial process may explain why there is so little guidance for district courts in dealing with this problem. Yet the accumulated frustration of the federal judiciary and the present need to deter Green and others who may follow him require us to enter an order that is both effective and constitutional. We follow the lead of other courts [21] but proceed in a somewhat different manner. The district court is directed to vacate its amended order of June 12 and to enter in its stead the following:

Petitioner may not file any civil action without leave of court. In seeking leave of court, petitioner must certify that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal court. Upon a failure to certify or upon a false certification, petitioner may be found in contempt of court and punished accordingly.

Our order is admittedly severe. But we believe severity is called for at this time. This court does not intend to be burdened and harassed by the frivolous and malicious filings that have become the trademark of Clovis Carl Green. We hope the genuine prospect of further incarceration that our order raises will send a clear message to Green to observe strictly the terms and conditions of this order or else risk another postponement of his release from prison. We are not relying on any hope of reforming Green, or of appealing to his reason; we are saying point-blank that if he continues to show his contempt for the orderly judicial process, that process will accord him further time in prison as summarily as the law allows.

We believe our order also meets the constitutional and statutory concerns outlined above. First, the order does not impose any financial restrictions that might operate to preclude Green from filing a new and legitimate complaint. Green is free to seek to proceed in the district court (and this court on appeal, if necessary) *in forma pauperis.* However, Green must in each case satisfy, in addition to the terms of the order, the requirements of section 1915. Second, Green is entitled to the processes of the district court to file any claim upon a satisfactory demonstration of the novelty of the claim and its *bona fide* nature. This condition is not at all onerous and certainly does not interfere with Green's right of access. In determining whether a claim Green wishes to raise is a new one, the district court shall employ traditional notions of res judicata.[22] Failure to certify that the claim has not been decided before in any federal court or a false certification will render Green in violation of this order and in con-

---

**21.** The district court in *Green v. Wyrick*, 428 F.Supp. 732 (W.D.Mo.1976), found precedent for its injunctive order in several cases wherein courts had enjoined abusive litigants. 428 F.Supp. at 742–43. *E.g., Adams v. American Bar Ass'n*, 400 F.Supp. 219, 227–28 (E.D.Pa. 1975) (order perpetually enjoining plaintiffs from "instituting any further action or encouraging, aiding, abetting or acting in concert with any other person or persons to institute any further action based on any claim or cause of action which was or could have been asserted by plaintiffs in the complaint herein"); *Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I.) (order enjoining plaintiff from prosecuting any action, without leave of court, against certain government officials for actions taken within their official duties), *appeal dismissed*, 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963); *Boruski v. Stewart*, 381 F.Supp. 529 (S.D.N.Y. 1974) (injunction against instituting any further actions based on any matters set forth in the complaint); *Ruderer v. United States*, 462 F.2d 897 (8th Cir.), *cert. denied*, 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972) and *Ruderer v. Department of Justice*, 389 F.Supp. 549 (S.D.N.Y.1974) (two courts enjoined same plaintiff from commencing any further actions concerning his discharge from the Army). *See also Carter v. Telectron, Inc.*, 452 F.Supp. 944, 999 (S.D.Tex.1977) (plaintiff filed 178 suits over a fifteen-year period; district court issued order that, *inter alia*, prohibited plaintiff from using *in forma pauperis* privilege to prosecute certain causes of action). In each of these cases, the injunction was either issue- or party-specific, and therefore based on notions of res judicata. We adopt this approach as a strong and sound response to litigants who abuse the judicial process through repetitive filings.

**22.** For this purpose a dismissal under § 1915(d) as frivolous will be considered as tantamount to a disposition on the merits.

tempt of court. Although the penalty for any further abuse of the processes of this court is potentially substantial, the order does not preclude or even unduly burden Green from submitting a new and nonfrivolous complaint.

### III. CONCLUSION

For the foregoing reasons, the order of the district court under review is vacated, and the case is remanded to the district court with directions to enter the order set forth in this opinion.

*Vacated and remanded.*