936 F.2d 512
 Sir Keenan Kester COFIELD, Plaintiff-Appellant,
v.
ALA. PUBLIC SERVICE COMMISSION, its regulator body; South
Central Bell, et al., its divisions and
subsidiaries, AT & T, et al., its
divisions and subsidiary, Ala.
Dept. of
Corrections,
Defendants,
Morris L. Thigpen, Commissioner, individually and in his
official capacity, John E. Nagle, Warden, West
Jefferson Corr. Facility, Defendants-Appellees.
 No. 89-7787.
 United States Court of Appeals,
Eleventh Circuit.
 July 22, 1991.
 
 John C. Robbins, Birmingham, Ala., for plaintiff-appellant.
 Horace N. Lynn, Alabama Dept. of Corrections, Montgomery, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before JOHNSON and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case arises as a result of the district court's sua sponte dismissal with prejudice of all of Sir Keenan Cofield's present suits and its order requiring Cofield to pay full filing fees and seek prefiling approval of any complaints or papers filed by Cofield in the future.
 
 I. STATEMENT OF THE CASE
 A. Background Facts
 
 2
 Cofield is an overly litigious fellow. Among the many suits he has brought from his jail cell are suits against both McDonald's and Burger King for using pork fat in the oil used to fry french fried potatoes, thereby poisoning his body, mind and soul. He has brought at least three libel actions against various newspapers for prematurely printing his obituary.[1] He also brought an action against Coca-Cola alleging that a bottle of Coke he drank was filled with ground glass. He has threatened or sued various restaurants in various cities alleging food poisoning; it was later discovered that Cofield was incarcerated at the time he supposedly was eating in these restaurants. The majority of his suits, however, have been against various prison officials. In the Northern District of Alabama, Cofield has filed thirty-nine cases, in the Middle District thirty-two cases, and in the Southern District eight cases. In the state courts he has filed sixteen cases in the Bessemer division and ten cases in the Birmingham division of the Circuit Court of Jefferson County.
 
 B. Procedural History
 
 3
 Cofield filed the underlying suit against prison officials and AT & T in June of 1986. In June of 1989, the magistrate judge recommended that the defendants be granted summary judgment. The district court adopted the magistrate judge's report and granted summary judgment on July 12, 1989. Twenty days later, Cofield filed an untimely motion to vacate the judgment. See Fed.R.Civ.P. 59(e) (requiring motion to be filed in ten days). Thirty-three days after the judgment, Cofield filed an untimely notice of appeal. See Fed.R.App.P. 4(a)(1) (requiring notice to be filed within thirty days).
 
 
 4
 Meanwhile, on August 23, 1989, the district court, sua sponte, issued an order to show cause asking why Cofield should not be sanctioned for his overly litigious behavior. A hearing was held on August 31, 1989. On September 11, 1989, Cofield filed a motion in this Court admitting the untimeliness of his notice of appeal in the underlying suit and asking this Court to dismiss the appeal; we dismissed the suit. On September 26, 1989, the district court ordered all actions filed by Cofield then pending in the Northern District of Alabama dismissed as frivolous and the district court imposed several conditions upon Cofield's future use of the courts. Cofield brought this timely appeal of the district court's sanctions.
 
 II. ANALYSIS
 A. Jurisdiction
 
 5
 Cofield in his pro se brief suggests that district court judges are bound by the time limits in rule 59 of the Federal Rules of Civil Procedure which requires litigants to file motions for a new trial within ten days. The thrust of Cofield's argument is that it is unfair that he must file for a judgment notwithstanding the verdict or a new trial within ten days of the entry of judgment and district courts are not similarly constrained. Cofield argues that the district court lacked jurisdiction to order him to show cause because the order was issued more than ten days after the judgment in the underlying action. Cofield's arguments are without merit. Rule 59 sets time limits only for litigants. Because neither party filed a timely notice of appeal, the district court retained jurisdiction in the matter.
 
 B. The Merits
 
 6
 The district court ordered all of Cofield's present suits dismissed with prejudice. The court ordered Cofield to pay the full filing fees for all future lawsuits and to seek judicial approval for any complaints or papers filed in the future. In the opinion accompanying this order, the district court made several findings of fact. Cofield challenges the district court's findings of fact as well as the order.
 
 
 7
 1. The Dismissal of all of Cofield's Present Suits
 
 
 8
 Judge Acker, with the permission of the other active judges in the Northern District,[2] dismissed as frivolous all seven[3] of Cofield's present suits. All seven of Cofield's suits were filed in forma pauperis pursuant to 28 U.S.C.A. Sec. 1915 (West 1966 & Supp.1991).
 
 
 9
 A district judge, under the statute, "may dismiss [a] case ... if satisfied that the action is frivolous or malicious." 28 U.S.C.A. Sec. 1915(d). While most cases that are deemed frivolous are dismissed at the pleadings stage, see, e.g., Campbell v. Beto, 460 F.2d 765 (5th Cir.1972), our Circuit has recognized that despite the fact that the court may have reviewed the complaint and granted in forma pauperis status when the complaint was initially filed, "section 1915(d) empowers the court to dismiss the complaint [at any later date, if] the court later determines the action is frivolous or that the affidavit of poverty is untrue." Camp v. Oliver, 798 F.2d 434 (11th Cir.1986).
 
 
 10
 The Supreme Court in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), explained that the courts should strive to treat paying and non-paying litigants alike. Id. at 329, 109 S.Ct. at 1833. The Supreme Court, however, recognized that the courts subject only non-paying litigants' pleadings to a review for frivolity. The Supreme Court explained that it was acceptable for section 1915(d) to treat non-paying litigants differently because financial disincentives such as filing fees, court costs and rule 11 sanctions act to discourage paying litigants from filing frivolous law suits. Id. at 324, 109 S.Ct. at 1830. Thus the purpose of the frivolity review is to filter non-paying litigants' lawsuits through a screening process functionally similar to the one created by the financial disincentives that help deter the filing of frivolous lawsuits by paying litigants.
 
 
 11
 The issue confronting the Court in Neitzke was how the courts should apply the frivolity test. The Court began its analysis by stating that the lower courts should keep in mind the purposes of the frivolity provision when dismissing cases. Id. at 327, 109 S.Ct. at 1832. The Court in Neitzke held that a case is frivolous if "it lacks an arguable basis either in law or in fact." Id. at 325, 109 S.Ct. at 1831. In the event that the claim is arguable, but ultimately will be unsuccessful, the Court stressed that it must be treated like the claims brought by paying litigants and should survive frivolity review. The Court's decision was predicated on the notion that our procedural rules structure the adversarial process in a way designed to minimize decisional error. See id. at 329-30, 109 S.Ct. at 1833-34. The Court therefore noted that only a limited class of cases should be deemed frivolous; non-frivolous but weak cases, the Court recognized, are best dealt with on motions to dismiss and motions for summary judgment. The Court explained that cases which lack an arguable basis in law are those cases which are "indisputably meritless." Id. at 327, 109 S.Ct. at 1832. The Court further noted that an individual may state a claim that is capable of surviving a 12(b)(6) motion yet the claim may nonetheless be dismissed as frivolous because the factual contentions are so far-fetched or baseless. Id. at 327, 109 S.Ct. at 1832. Moreover, as the Neitzke Court noted, frivolity review will eliminate farfetched cases because, unlike 12(b)(6) motions, a judge performing an examination for frivolity under section 1915(d) is not required to assume the truth of the allegations.
 
 
 12
 With these standards in mind, we turn to the district court's dismissal of the seven cases. We review a district court's dismissal of a case under section 1915(d) under the abuse of discretion standard. See Camp v. Oliver, 798 F.2d at 437. That discretion, however, is far from limitless. As has already been noted, a district court may dismiss a case for frivolity only when the legal claim is indisputably meritless, the facts are far-fetched or baseless, or both. After carefully reviewing the record, we conclude that the district court did not abuse its discretion because the cases were all frivolous. Some of the cases alleged the fantastic, see Cofield v. Thigpen, 87-PT-2091-S (The complaint contains a rambling account of a conspiracy of prison officials to bribe Cofield into investigating improper behavior by other prison officials. Cofield, allegedly, was placed into administrative detention when he refused the bribe.); other cases were merely meritless, see Cofield v. Smith, 88-AR-859-S (suing because the cost of phone calls was too high). In the final analysis they are all frivolous.
 
 
 13
 Cofield claims in the alternative that the district court abused its discretion by dismissing all of Cofield's pending cases without individually reviewing the merits of the cases. Cofield claims that the court assumed that because some of his complaints were frivolous therefore all of his complaints were frivolous. The district court, however, gave Cofield notice and a hearing. Moreover, Cofield asserts that the district court never read the cases yet he has no proof to support this assertion. Before we accept an allegation that the district court has not reviewed the dismissed cases, it is incumbent upon the party raising this allegation to come forward with some basis for it.
 
 2. The Injunction
 
 14
 a. The Findings of Fact
 
 
 15
 The district court found that Cofield was a con-artist who sought to use the legal system to extort settlements from unsuspecting parties. The court also found that Cofield was overly litigious and "no more than a gadfly and an exploiter of the court system."
 
 
 16
 Cofield argues that there is insufficient evidence in the record of his activities to warrant the factual findings. This court will reverse the factual findings if, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 17
 After studying the record, we conclude that there is no way we could possibly come to any different factual conclusions than those arrived at by the district court. In one deposition, Cofield proudly boasted that he was the "most litigious inmate in the system."[4] In a letter in the file, he suggested that he was bored in prison and that he brought suits in order to make the newspapers every time he could. There is evidence in the record that he sued Coca-Cola because he allegedly drank a bottle of Coke filled with ground glass. He alleged he purchased the Coke on October 28, 1987 in Birmingham, even though it is undisputed that he was in prison in Bessemer on that day, that the prison canteen serves only Pepsi products, and that the prison allows inmates to drink only out of aluminum cans. There is evidence in the record that he tried to extort money from the Four Seasons restaurant in New York for food poisoning suffered while he was in New York when he was, in fact, in prison on that day as well. There also is evidence that similar extortion scams were attempted, and occasionally succeeded, against various restaurants which allegedly served contaminated food to Cofield. Finally, on several occasions (we can find at least three references in the record), Cofield sued various newspapers for libel and defamation because they erroneously published his obituary, thus causing trauma and psychological damage to his wife and daughter. The state claims that Cofield actually has no wife or daughter. There also is some evidence in the record suggesting that Cofield placed the erroneous obituaries himself in order to provide an opportunity for a later lawsuit.[5] We can find nothing in this voluminous record to suggest that the district court made any mistake of fact.
 
 
 18
 The district court also made a finding of fact that Cofield had access to money either through his family, his extortion, or his legal work on behalf of fellow inmates. The court noted that despite his prison account showing an average monthly balance of two or three dollars, Cofield occasionally sent money orders to the district court clerk's office and admitted to a reporter from the Montgomery Advertiser that he had made thousands of dollars from his extortionate activities. To the extent that the district court found that Cofield had access to an unknown quantity of money, the district court is not clearly erroneous. To the extent that the district court took judicial notice of the Montgomery Advertiser article as proof that Cofield had access to thousands of dollars hidden somewhere, the district court is in error. That a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2).[6]
 
 
 19
 b. The Order Requiring Cofield to Pay Full Filing Fees and
 
 Seek Prefiling Approval
 
 20
 Cofield argues that the district court's restrictions are so burdensome that they operate to deny him meaningful access to the federal courts. The Supreme Court has recognized "that prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). However, as the District of Columbia Circuit has noted, that right "is neither absolute nor unconditional." In re Green, 669 F.2d 779 (D.C.Cir.1981) (per curiam). The Green court noted that the right of access is strongest when the prisoner is bringing direct and collateral appeals of criminal convictions. Id. at 785. The right is also strong when the prisoner is bringing civil cases involving the deprivation of fundamental constitutional rights. The right of access is weaker, however, when the case does not raise any constitutional claim. Id. The Supreme Court has also recognized that this right of access may be counterbalanced by the traditional right of courts to manage their dockets and limit abusive filings. In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (per curiam).
 
 
 21
 In recent years, courts have attempted to balance the various concerns and have determined that, if the right of access means anything, it means that courts cannot construct blanket orders that completely close the courthouse doors to those who are extremely litigious. See Procup v. Strickland, 792 F.2d 1069, 1074 (11th Cir.1986) (en banc) (per curiam) (holding that a requirement that an abusive filer must use an attorney in all future cases was excessive because it effectively "foreclosed ... any access to the court."); Abdullah v. Gatto, 773 F.2d 487 (2d Cir.1985) (per curiam) (holding that district court can deny in forma pauperis applications filed by defendant for all cases except those in which he challenges his conviction or the terms of his imprisonment); Franklin v. Murphy, 745 F.2d 1221 (9th Cir.1984) (modifying an order limiting the prisoner to six in forma pauperis claims a year to enable the prisoner to make a showing, if necessary, to expand the upper limit in the event that he needs to file extra petitions); In re Green, 669 F.2d 779 (D.C.Cir.1981) (holding prospective ban on in forma pauperis petitions unconstitutional, but issuing an order notifying prisoner that he will be held in criminal contempt if he files repetitive petitions). The Supreme Court recently took action in In re McDonald, supra, against an abusive filer. The Court required Mr. McDonald to pay the full filing fees for any future applications for extraordinary writs. The Court justified its ruling in light of the permissive nature of the in forma pauperis statute, see 28 U.S.C. Sec. 1915 ("[a]ny court of the United States may authorize the commencement ... of any suit ... without prepayment of fees"), and in light of the Court's traditional ability to supervise its docket. The Court was motivated by Mr. McDonald's efforts to clog the docket with a stream of petitions for relief and attempts at appeals. While the Court prospectively denied Mr. McDonald permission to proceed in forma pauperis for extraordinary writs, the Court specifically permitted Mr. McDonald to proceed in forma pauperis through ordinary certiorari petitions.
 
 
 22
 The federal courts, therefore, may limit the filing of frivolous law suits on a case by case basis. See In re Green, supra. The courts may also, on a case by case basis, deny an application to proceed in forma pauperis when it appears that the litigator has assets. Sellers v. United States, 881 F.2d 1061 (11th Cir.1989) (per curiam). The courts may also deny, prospectively, all applications to proceed in forma pauperis for extraordinary writs, at least when other avenues to the courts remain open. In re McDonald, supra. Finally, the courts may take other, more creative, actions to discourage hyperactive litigators as long as some access to the courts is allowed. Procup v. Strickland, supra.
 
 
 23
 The question then is whether the district court's denying Cofield the right to proceed in forma pauperis and requiring prefiling screening prevent Cofield from obtaining any access to the courts. On the basis of this record, we conclude that the prefiling screening of claims leaves sufficient access to the courts. The district court ordered Cofield to send all pleadings to a judge for prefiling approval; this screening differs from in forma pauperis proceedings because it applies to his actions regardless of whether he pays the filing fee. As long as the district court judges merely screen out the frivolous and malicious claims and allow the arguable claims to go forward, Cofield is not placed in a position different from other in forma pauperis litigants. Arguable claims may go forward, at least until the judgment on the pleadings stage. This procedure is acceptable because it is not an excessive response to Cofield's clear abuse of the system; Cofield still has some access to the courts. Should Cofield have a colorable claim he will be able to file his claim in federal court.
 
 
 24
 We are, however, troubled by the district court's prospective denial of in forma pauperis status. Based on the legislative history of the in forma pauperis statute discussed in Neitzke, supra, it is clear that Congress passed the statute because it recognized that filing fees and court costs close the courthouse doors to some individuals. By prospectively denying Cofield in forma pauperis status, the district court could be prospectively shutting the courthouse door to him. Our precedent condemns such a result. While the Supreme Court has, on three separate occasions, sanctioned an individual by prospectively denying in forma pauperis status for extraordinary writs, see In re Demos, --- U.S. ----, 111 S.Ct. 1569, 114 L.Ed.2d 20 (1991); In re Sindram, --- U.S. ----, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991); and In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989), every time it has been careful to use this sanction in a way that does not completely deny access to the Supreme Court for that individual. In all three cases, the Supreme Court carefully kept at least one door open by allowing these three litigants to file for in forma pauperis status when they file their writs of certiorari, by far the most important doorway to Supreme Court review. According to the statute, in forma pauperis status may be denied when the claim is frivolous or the litigant has sufficient money to pay for court costs and filing fees. 28 U.S.C.A. Sec. 1915(d) (1966). The Supreme Court based its prospective denial of in forma pauperis status in these three cases on the fact that applications for extraordinary writs are almost always denied and the three litigants had filed several frivolous applications in the past. The Court essentially adopted a presumption of frivolity in these cases. Such a presumption would be inappropriate in Cofield's case because the prospective denial is not limited to his applications for something so rarely granted as an extraordinary writ.
 
 
 25
 The district court's opinion cannot be justified on the alternative ground that Cofield is, in fact, wealthy. While the district court made a finding that Cofield had access to some money, the record does not support this finding. The court's order also fails to take into account the permanent nature of its decision. While it may be true that Cofield may be able to afford his filing fees today, we are unable to say that this will always be true. We therefore follow our Circuit's rule that in forma pauperis status should be evaluated on a case by case basis. See Sellers v. United States, 881 F.2d at 1062-63.
 
 III. CONCLUSION
 
 26
 We therefore AFFIRM the court below with the exception of its decision to deny Cofield in forma pauperis status in all future cases.
 
 
 
 [1]
 Some of the newspapers have suggested that Cofield himself placed the obituaries to bring a later suit
 
 
 [2]
 The action of one district judge dismissing cases assigned to the docket of another district judge is unusual. However, we have carefully studied the briefs of Cofield and even with the liberal reading due this pro se litigant's brief, see Powell v. Lennon, 914 F.2d 1459 (11th Cir.1990), we are unable to find any complaint about the due process implications of this procedure. We therefore have no basis in this case to review the propriety of this procedure
 
 
 [3]
 In the briefs and at oral argument, the parties assumed that the district court dismissed thirty-nine cases. This assumption proved to be wrong. Over the past few years Cofield filed thirty-nine cases in the Northern District, but only seven were still active when the district court dismissed all of Cofield's active cases
 
 
 [4]
 This deposition was taken pursuant to a suit in which Cofield was suing the state because he had heard that the state was going to stop education programs in the prison. This suit is typical of Cofield's lack of investigation before rushing off to bring one of his suits. During this deposition, Cofield admitted that he could not possibly suffer any damages from the alleged action of prison officials because he had already finished the education program. He also admitted that he had no personal knowledge of the alleged cutbacks, that he based the suit on a rumor that he had heard about planned cut backs at other prisons, that, in fact, the education program had recently expanded and that all indications were that the program was going to expand further. At the end of the deposition, Sir Keenan admitted that he made a mistake by filing a baseless suit
 
 
 [5]
 At this writing, Cofield was to stand trial in early May of 1991 for wire fraud because of his settlement demands in one of the obituary cases
 
 
 [6]
 Nor is this fact "generally known within the territorial jurisdiction of the trial court." Fed.R.Evid. 201(b)(1)