# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 13, 2011

## IN RE: BOBBY D. GREEN

**Appeal from the Circuit Court for Davidson County**
**No. 10GC6927      Barbara N. Haynes, Judge**

---

**No. M2011-00069-COA-R3-CV - Filed October 4, 2011**

---

A *pro se* litigant failed to pay the court costs resulting from complaints he had filed, and the Circuit Court entered an order in 2006 that allowed it to refer future complaints by that litigant to a Special Master for screening. The court's order directed the Special Master to determine whether the court costs had been satisfied and to file a written report recommending whether the complaint should be allowed to proceed or be dismissed. The trial court was empowered to dismiss the complaint without a hearing if the recommendation of the Special Master was that the case not proceed. In the appeal before us, the litigant appealed from a general sessions judgment that denied him any relief for the purchase of a lawn mower that he alleged was defective. The Special Master's investigation revealed that the litigant had failed to pay any of the court costs previously assessed against him and that additional costs had accrued since then. In accordance with the Special Master's recommendation, the court dismissed his complaint. We find that the trial court acted within its authority, and we accordingly affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirm**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Bobby D. Green, Whites Creek, Tennessee, Pro Se.

## OPINION

### I. BACKGROUND

The record shows that Mr. Green filed a civil warrant in the Davidson County General Sessions Court on July 18, 2010. He complained that he had been "fraudulently lured into a bad business transaction" at a yard sale when he bought a lawnmower for $25 that did not

work as promised and which he was "forced to dispose of." The summons found in the appellate record asks that a named defendant of unknown address be required to appear, as well as "two (2) unknown named women" purportedly living at a different address (which address we need not recite in this opinion) and whom Mr. Green alleged were present when the sale was conducted.

Service could not be obtained against the parties named in the summons, and Mr. Green accordingly moved the court to allow an alias summons to be issued. The court granted his motion. That summons was likewise not served, apparently because the residence at the address furnished by Mr. Green was determined to be vacant. Mr. Green then filed a motion to cite a Sheriff's Deputy for contempt for the failure of service, alleging that the failure was deliberate and retaliatory against him because he is a "poor person." The motion was denied. Mr. Green filed a notice of appeal to the Circuit Court of Davidson County as well as a motion to extend his "indigency certification" on appeal.[1]

The Circuit Court referred Mr. Green's case to the Special Master, in accordance with a prior order of that court which had been filed on November 14, 2006. That order recited that Mr. Green had failed to pay court costs of $524 from two previous cases and directed that any future *pro se* complaints filed by him would be referred to the Master, who was then to determine whether the court costs had been satisfied and to file a written report recommending whether, even if the costs had not been paid, the complaint should be allowed to proceed or be dismissed. No answer or responsive pleading from a defendant would be required unless the complaint was allowed to proceed. Mr. Green was given ten days from the entry of the Master's report to move the court to review it. Otherwise, the report was to be adopted by the trial court without hearing. There is no indication in the record that Mr. Green appealed the order of November 14, 2006.

The report of the Special Master in this case revealed that Mr. Green had still not paid the court costs from the two cases cited in the 2006 order, and that the total unpaid costs from those cases and four subsequent cases amounted to $1367.75, while another $1,067 in unpaid costs had accrued against him as the result of appeals. The Master recommended that Mr. Green's complaint be dismissed. Mr. Green filed a timely objection to the report, but the trial court found that the objection was not well taken, and it dismissed his complaint. This appeal followed.

---

[1]Mr. Green's motion implies that he filed an affidavit of indigency which was approved by the court. However, no such affidavit is found in the appellate record.

## II. ANALYSIS

### A. The Issue on Appeal

The appellate record was filed in this case on January 13, 2011, but Mr. Green failed to file a brief within the thirty days of that date, as is required by Tenn. R. App. P. 29(a). On February 23, 2011, this court ordered him to either file a brief within ten days or else show cause why his appeal should not be dismissed. Mr. Green filed a short response on March 8, 2011. He also requested that counsel be appointed for him. We denied his request because, unlike indigent criminal defendants, indigent civil litigants have neither a constitutional nor a statutory right to be appointed counsel. *Hessmer v. Hessmer*, 138 S.W.3d 241, 245 (Tenn. Ct. App. 2003).

We gave Mr. Green an additional seven days to file his brief, and we declared that if no brief was filed within that time we would consider his filing of March 8, 2011 as his brief and we would decide the case on the basis of the record and of that filing. The document in question was a single hand-written page titled "Appellant's Motion to Clarify his Position Herein," which actually did very little to clarify the grounds upon which Mr. Green was requesting relief. We have determined from our examination of the record, however, that the only proper issue on appeal is whether the trial court acted within its authority when it dismissed Mr. Green's complaint because of his failure to pay court costs assessed against him in prior cases. Because this is a question of law, our review of the trial court's order is *de novo* upon the record with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

### B. Court Costs

Tennessee has long followed the principle that the expenses of litigation are to be borne by the litigants themselves and has recognized that our legislature possesses the authority to establish the conditions and the procedures for the collection of those expenses. *See Wilson v. Wilson,* 185 S.W. 718, 720 (Tenn. 1916) (citing an 1835 statute for the collection of court costs in divorce cases). Tennessee Code Annotated § 20-12-120 states that "[n]o leading process shall issue from any court without security being given by the party at whose instance the action is brought for the successful prosecution of the party's action, and, in case of failure, for the payment of court costs and taxes that may be awarded against the party, unless in cases and instances specially excepted." Thus, a plaintiff usually posts a bond or pays a fee to the court clerk upon filing a complaint. Additional fees are assessed with each additional filing.

Tennessee Code Annotated § 20-12-101 states that a successful party in a civil lawsuit is entitled to recover his costs from the unsuccessful party, "unless otherwise directed by law or by a court of record, for which judgment shall be rendered." Tennessee Code Annotated § 20-12-119 gives the presiding judge the authority "to apportion the cost between the litigants, as in the presiding judge's opinion the equities of the case demand." Regardless of how costs are apportioned, Davidson County Local Rule § 33.03 states that "all final judgments shall provide for the taxing of court costs."

In order to protect the rights of all people to have access to the courts, persons whose poverty renders them unable to pay the up-front costs associated with filing a complaint may file a Uniform Civil Affidavit of Indigency with the court clerk. If the trial court approves the affidavit, the party is excused from prepaying the litigation costs or giving security for such costs. *See* Tenn. R. S. Ct. 29. However, the approval of an affidavit of indigency serves merely to defer the payment of costs, not to excuse it.

Tenn. Code Ann. § 20-12-127(b) reads, "[t]he filing of a civil action without paying the costs or taxes or giving security for the costs or taxes does not relieve the person filing the action from responsibility for the costs or taxes but suspends their collection until taxed by the court." Referring to Tenn. Code Ann. § 20-12-127(b), our Supreme Court said, "[w]e cannot conceive of any statute that could be more clear or unambiguous, and according to the plain language of the statute, an indigent litigant is never permanently relieved from the duty of paying litigation taxes, although such payment may be deferred." *Fletcher v. State*, 9 S.W.3d 103, 105 (Tenn. 1999).

Our Supreme Court determined long ago that the taxing of court costs against unsuccessful litigants does not violate the letter or spirit of the requirement that justice be administered "without sale, denial, or delay." *Harrison, Pepper & Co. v. Willis*, 54 Tenn. (7 Heisk.) 35, 46-47 (1871); *see* KOCH, W.C., JR. *Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article 1, Section 17 of the Tennessee Constitution,* 27 U. MEM. L. REV. 333 (1997).

If a party fails to pay the costs assessed against him, the courts have the authority to execute against that party's property. Tenn. Code Ann. § 20-12-136. Of course, in some situations, execution may not be practical. We cannot conclude, however, that the legislature intended to allow the assessment of costs to become an empty exercise or to deny the courts any recourse when a party repeatedly refuses to comply with a valid order for the payment of costs. The courts have authority to take steps to prevent such a litigant from accruing more costs by filing meritless litigation.

## C. The Court's Authority

It cannot be disputed that trial courts have the authority to dismiss a lawsuit when a litigant fails to comply with their orders. *See* Tenn. R. Civ. P. 37.02(C); Tenn. R. Civ. P. 41.02(1). "Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court." *Hodges v. Attorney General,* 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000) (citing *Kotil v. Hydra-Sports, Inc.*, No. 01A01-9305-CV-00200, 1994 WL 535542, at *3 (Tenn. Ct. App. Oct. 5, 1994) (no Tenn. R. App. P. 11 application filed).

The trial court's authority is also broad enough to allow it, under appropriate circumstances, to impose "prefiling restrictions on a litigant's right to initiate a lawsuit in order to curb repetitive, frivolous, or vexatious litigation." *See Hooker v. Sundquist*, 150 S.W.3d 406, 412 (Tenn. Ct. App. 2004). In that case, the trial court sanctioned a litigant for the serial filing of at least four separate lawsuits against different elected officials asserting an identical claim in each one: that by serving "meat and drink" at political fundraisers, the defendants violated Article X, section 3 of the Tennessee Constitution.[2] Those lawsuits had all been resolved against Mr. Hooker.

The sanctions had two parts. First, Mr. Hooker was ordered to pay all outstanding court costs associated with previously dismissed cases in which he was the plaintiff. He was further barred from filing any more complaints against the State of Tennessee or elected officials until the court costs were paid. Second, any complaint filed in the 20th Judicial District by Mr. Hooker within the next 24 months was to be submitted to the Special Master to determine whether it was frivolous or duplicative of other lawsuits previously filed by him. As in the case before us, the Master was directed to file a report with the trial court recommending whether the complaint should proceed or be dismissed, the litigant was given ten days to file an objection to the report, and in the absence of objection the trial court could adopt the recommendation without a hearing. *Hooker v. Sundquist*, 150 S.W.3d at 410-411.

The *Hooker v. Sundquist* court cited a number of federal cases in which similar sanctions were upheld. For example, in *Ortman v. Thomas*, 99 F.3d 807 (6th Cir. 1996), the Sixth Circuit Court of Appeals held that the District Court's order imposing an absolute bar on future filings by a Michigan attorney was too broad, and it accordingly modified that order by requiring that all his filings be screened by a United States Magistrate Judge. The court stated that "it is permissible to require one who has abused the legal process to make a

---

[2]Mr. Hooker asserted that he had actually filed 13 lawsuits over a period of nine years, challenging the "meat and drink" practices of elected officials. *Hooker v. Sundquist,* 150 S.W.3d at 410, fn. 5.

showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." *Id.,* 99 F.3d at 811.

*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264 (6th Cir. 1998), was a highly unusual case that originated in the Eastern District of Tennessee. The plaintiff was an individual who claimed to be a "Humphries heir," that is, a relative of the man on whose property the Spindletop oil field was discovered ninety years earlier and who died intestate. The plaintiff claimed that as a natural heir of the intestate, he was entitled to a share of the wealth generated by that field. The district court dismissed the complaint as meritless and noted that there had been an "ongoing flow of meritless and repetitive 'Humphries heirs' cases." To stem that flow, the court issued an injunction under which no future such cases could be filed without leave of court.

The plaintiff appealed, arguing that the restrictions constituted an impermissible bar on future lawsuits. The appellate court upheld the restrictions stating that "we see nothing wrong, in circumstances such as these, with an order that restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category." *Id*, 141 F.3d at 269.

In the case of *In re Green*, 669 F.2d 779 (D.C. Circuit 1981) (per curiam), the trial court barred the filing of any future complaints by a prison inmate who was a "prolific filer," unless he paid all filing fees and a $100 deposit for future costs.[3] The federal appeals court found that such a limitation violated Mr. Green's statutory and constitutional rights of access to the courts, but it acknowledged that his "flagrant and serious abuse of the judicial process must come to a stop." *Id.*, 669 F.2d at 787.

The appeals court accordingly modified the trial court's order to prohibit Mr. Green from filing any civil action without leave of court. In seeking leave of court, Mr. Green was required to certify that the claims he wished to present were new claims never before raised and disposed of on the merits by any federal court.[4] Other cases upholding various restrictions on the filing of complaints by litigants who are deemed to have abused the system include *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Circuit 1987); *Abdullah v. Gatto*, 773

---

[3]The federal appeals court describes the plaintiff as "in all likelihood the most prolific prisoner litigant in recorded history."

[4]In the subsequent case of *Hurt v. Soc. Sec. Admin.,* 544 F.3d 308, 310-11 (D.C. Cir. 2008), the D.C. Circuit abrogated its own holding that requiring an inmate who was found to be an abusive litigant to pre-pay his litigation costs was a violation of his constitutional rights. The court reached its new conclusion in reliance on a decision of the United States Supreme Court, *In re McDonald*, 489 U.S. 180 (1989).

F.2d 487, 488 (2d Circuit 1985) (per curiam); and *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).

In the case before us, the trial court entered an order requiring that future *pro se* complaints filed by Mr. Green be referred to the Special Master for a determination of whether prior court costs have been satisfied and for the filing of a written report recommending whether the complaint should be allowed to proceed or be dismissed. The court's order did not, however, require that the Special Master recommend against allowing the complaint to proceed if those costs were not satisfied. Thus, if the Master found the complaint to have some merit, there was nothing to prevent her from recommending that it be heard, regardless of any costs outstanding.

In the event of a negative recommendation by the Master, the trial court's order gave Mr. Green the right to file an objection to the report, and the court was implicitly required to consider any such objection. The order did not place any limit on the substance of the objection, so Mr. Green was free to present any argument he believed might persuade the court that his case had sufficient merit that it should be allowed to proceed.

The trial court followed the procedure set out in its 2006 order when it dismissed Mr. Green's complaint in the present case. The 2006 order is a valid exercise of the court's authority, and since there is nothing in the record to indicate that the trial court erred by dismissing Mr. Green's complaint, we affirm that dismissal.

### III.

The order of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Bobby D. Green.

_____
PATRICIA J. COTTRELL, JUDGE