IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

February 27, 1998

Cecil W. Crowson
Appellate Court Clerk

JOHN JAY HOOKER,          )
                                   )
      Plaintiff/Appellant,   )
                                   )
VS.                         )    Davidson Chancery
                                   )    No. 96-3601-II
SEN. FRED D. THOMPSON,  )
                                   )
      Defendant/Appellee,  )
                                   )    Consolidated
and                         )    Appeal No.
                                   )    01-A-01-9709-CH-00533
JOHN JAY HOOKER,          )
                                   )
      Plaintiff/Appellant,   )
                                   )    Davidson Chancery
VS.                         )    No. 96-2847-III
                                   )
DON SUNDQUIST, ET AL.,   )
                                   )
      Defendants/Appellees.  )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR
THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

JOHN JAY HOOKER
222 Polk Avenue
Nashville, Tennessee 37203
      Pro Se/Plaintiff/Appellant

JOSEPH A. WOODRUFF
K. SUZANNE CRENSHAW
511 Union Street, Suite 2100
Nashville, Tennessee 37219-1760
      Attorneys for Defendant/Appellee Sen. Fred D. Thompson

JOHN KNOX WALKUP
Attorney General and Reporter

JANET M. KLEINFELTER
Assistant Attorney General
425 5th Avenue North
Nashville, Tennessee 37243-0496
      Attorneys for Defendants/Appellees Don Sundquist, et al.

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# **O P I N I O N**

The plaintiff, a candidate for the United States Senate, filed two actions in the Chancery Court of Davidson County alleging that giving or receiving campaign contributions violates state law. The court dismissed both actions. We agree that the lower courts properly dismissed plaintiff's claims, because the regulation of campaign financing for federal elections is preempted by federal law.

## I.

Mr. Hooker, a duly qualified candidate for the United States Senate, filed an action on September 12, 1996 against the Governor, the Secretary of State, and the Attorney General, alleging that the other candidates in the race were violating state law by receiving campaign contributions. In addition to seeking a declaration that accepting campaign contributions is illegal, the complaint sought a mandatory injunction requiring the defendants to enforce the law. The chancellor consolidated the final hearing with the hearing on the temporary injunction, and dismissed the complaint because the Federal Election Campaign Act (FECA), 2 U.S.C. § 431, et seq., superseded and preempted any provision of state law with respect to federal elections.

On November 14, 1996, Mr. Hooker filed another action against Fred D. Thompson, the successful candidate in the 1996 election, alleging that Mr. Thompson had accepted campaign contributions from residents and non-residents of Tennessee in violation of state law. Mr. Hooker sought a declaration that Mr. Thompson's election was void. Mr. Thompson moved to dismiss the complaint because the financing of federal elections is governed exclusively by federal law and because the same issue had been decided adversely to Mr. Hooker in two federal cases. The chancellor dismissed the action without giving any specific reasons. We have limited the issue on appeal to the question of preemption.

**II.**

**Federal Preemption**

Article VI, § 1 of the United States Constitution provides that federal law is the "supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." This provision renders ineffective any state law that conflicts or interferes with federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992). Federal law is a creature of the United States Congress, and it is congressional intent that determines whether the states may also legislate in an area where Congress has spoken. *Id.* Although there are other tests to decide doubtful cases,[1] the surest indication of congressional intent is an express provision that the states may not legislate in the area controlled by the federal statute. *See Weber v. Heaney*, 995 F.2d 872 (8th Cir. 1993).

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation.

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 at 517 (1992).

Congress passed FECA in 1971. In the 1974 amendments to the Act, Congress included the following: "Provisions of this Act, and of rules prescribed under this act, supersede and preempt any provisions of State law with respect to Federal office." As amended, the Act imposed limits on contributions to candidates for federal offices and mandated reporting and disclosure of receipts and disbursements by the candidates' committees.

The Act also created the Federal Election Commission (FEC) and vested it with "primary and substantial responsibility for administering and enforcing

---

[1]As where Congress has occupied the field so pervasively that an intent to prevent state action may be inferred. *See Teper v. Miller*, 82 F.3d 989 (11th Cir. 1996).

the act." *Buckley v. Valeo,* 424 U.S. 1, at 109 (1976). Pursuant to its statutory powers the FEC issued the following regulation:

> (a)      The provisions of the Federal Election Campaign Act of 1971, as amended, and rules and regulations issued thereunder, supersede and preempt any provision of State law with respect to election to Federal office.
> (b)      Federal law supersedes State law concerning the --
>      (1)      Organization and registration of political committees supporting Federal candidates;
>      (2)      Disclosure of receipts and expenditures by Federal candidates and political committees; and
>      (3)      Limitations on contributions and expenditures regarding Federal candidates and political committees.
> (c)      The Act does not supersede State laws which provides for the --
>      (1)      Manner of qualifying as a candidate or political organization;
>      (2)      Dates and places of elections;
>      (3)      Voter registration;
>      (4)      Prohibition of false registration, voting fraud, theft of ballots and similar offenses; or
>      (5)      Candidate's personal financial disclosure.

There could hardly be stronger support for the conclusion that Congress intended to reserve to itself the regulation of campaign financing for federal elections. If our conclusion in this respect is correct, the state law provisions on which Mr. Hooker relies have been preempted. *See Teper v. Miller*, 82 F.3rd 989 (11th Cir. 1996); *Bunning v. Commonwealth of Ky.*, 42 F.3rd at 1008 (6th Cir. 1994); *Weber v. Heaney*, 995 F.2d 872 (8th Cir. 1993).

In opposition, Mr. Hooker argues that other constitutional provisions reserved to the states the power to regulate federal elections -- especially where the issue was not limitation of choice but expansion of choice by ensuring fairness and honesty in the election process. He cites the 10th Amendment to the Constitution, which reserved to the states all the powers not delegated to the federal government, and Article I, § 4, which provides:

> The times, places and manner of holding elections for senators and representatives, shall be prescribed in each state by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing senators.

On these two constitutional provisions, Mr. Hooker bases his argument that FECA itself is unconstitutional if it is construed as preempting the application of the state laws on which he relies to federal elections.[2]

Unfortunately, none of the authorities cited by Mr. Hooker support his argument. In *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), the United States Supreme Court noted first the obvious limitation on the states' power to regulate the time, place, and manner of federal elections. That limitation is contained in Art. I, § 4 itself: "but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators." Citing The Federalist Papers, Nos. 57, 59 and 60, the Court concluded that the grammar of the Constitution had created a safeguard against the states' abuse of the granted power by reserving to Congress itself the power to make or alter regulations in the area of federal elections. Therefore, the Court struck down a state law that disqualified a candidate for Congress simply because he had already served three terms in Congress.

In *Buckley v. Valeo*, 424 U.S.1 (1976), the Supreme Court upheld the validity of FECA but stressed that even Congress could not prohibit a candidate from raising money to effectively advocate the candidate's views. The Court upheld the limitations on how much one person could contribute to a candidate but struck down a limitation on how much a candidate could contribute to his or her own campaign. Rather than limiting congressional power, Art. I, § 4 gave Congress the power to preempt state laws that regulated the times and manner of federal elections.

The conclusion must follow, therefore, that the 10th Amendment does not reserve to the states the power to regulate campaign financing for federal

---

[2]On this point we should be clear: it is not the application of the state laws to federal elections that Mr. Hooker insists on, but his interpretation of the state laws. His interpretation being that the state laws prohibit the giving and receiving of campaign contributions; that receiving a campaign contribution is tantamount to accepting a bribe. Since we have limited this appeal to the issue of preemption, we do not express an opinion as to Mr. Hooker's interpretation.

elections. That power has specifically been assigned to Congress if it chooses to exercise it. In this case it has.

At oral argument Mr. Hooker also contended that even if FECA preempted state laws as a general proposition, Congress had not occupied the field of out-of-state contributions. We fail to see, however, how FECA distinguishes one from the other. A valid and legal contribution allowed by FECA cannot be prohibited by state law, just as such a contribution made illegal by FECA could not be made legal by state law.

The judgment of the trial court is affirmed and the cause is remanded for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE