IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 17, 2004 Session

**JOHN JAY HOOKER v. DON SUNDQUIST, DE FACTO GOVERNOR OF
TENNESSEE, IN HIS INDIVIDUAL CAPACITY, IN HIS CAPACITY AS CANDIDATE,
AND IN HIS OFFICIAL CAPACITY AS DE FACTO GOVERNOR, PAUL SUMMERS,
ATTORNEY GENERAL OF TENNESSEE, IN HIS OFFICIAL CAPACITY AND AS A
MEMBER OF THE SUPREME COURT BAR OF TENNESSEE, LIEUTENANT
GOVERNOR JOHN WILDER, IN HIS OFFICIAL CAPACITY AS SPEAKER OF
THE SENATE, AND JIMMY NAIFEH, IN HIS OFFICIAL CAPACITY AS SPEAKER
OF THE HOUSE OF REPRESENTATIVES**

An Appeal from the Circuit Court for Davidson County
No. 01-C-3804    Thomas W. Brothers, Judge

---

No. M2003-02042-COA-R3-CV - Filed April 27, 2004

---

This case involves Rule 11 sanctions. The plaintiff filed a lawsuit challenging the practice of serving meat and drink at political fund raisers, alleging that the practice violates Article X, section 3 of the Tennessee Constitution. The defendants filed a motion to dismiss, based in part on the fact that the plaintiff had previously filed similar lawsuits against other defendants upon the same constitutional grounds, and that these prior lawsuits had been dismissed. The trial court granted the defendants' motion to dismiss. The defendants then filed a motion for sanctions pursuant to Rule 11 of the Tennessee Rule of Civil Procedure. This motion was denied. The defendants appealed, and this Court reversed the denial of sanctions and remanded the case to the trial court. On remand, the trial court imposed as a sanction a screening mechanism whereby any complaint filed by the plaintiff within the next two years must be reviewed by a special master to ensure that it is not legally frivolous or duplicative. The plaintiff now appeals that order, claiming that the sanction imposed violates his constitutional rights. We affirm, concluding that the sanction imposed is reasonable and does not deprive the plaintiff of his constitutional rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Janet

M. Kleinfelter, Senior Counsel, for the Appellants, Governor Don Sundquist, Paul Summers, Lieutenant Governor John Wilder and Jimmy Naifeh.

John Jay Hooker, *pro se*.

## OPINION

On December 13, 2002, Plaintiff/Appellant John Jay Hooker ("Mr. Hooker") filed a complaint against Governor Don Sundquist, individually and in his official capacity, as well as Lieutenant Governor John Wilder, Speaker Jimmy Naifeh, and Attorney General Paul Summers, in their official capacities (collectively, "defendants").[1] The complaint alleged that Governor Sundquist had violated Article X, section 3 of the Tennessee Constitution during his 1998 re-election campaign by holding fund raisers in which "he served 'meat and drink' in the process of party-giving to voters, lobbyists and friends 'to be elected'. . . ." The complaint stated that it was the "fourth in a series of cases filed in the Circuit Court to 'reform the election process in Tennessee' to make the election process lawful under both the Federal and State Constitutions." Several days later, Mr. Hooker filed an amended complaint that was virtually identical to the original complaint.

On January 18, 2002, the defendants filed a motion to dismiss Mr. Hooker's complaint, asserting that there was no factual support for any of the allegations and that the complaint was contrary to existing law. The defendants relied in part on other lawsuits filed by Mr. Hooker against other public officials in which he raised the same constitutional challenges to the practice of serving meat and drink at fund raisers. These lawsuits were resolved against Mr. Hooker. ***See, e.g., Hooker v. Bredesen***, No. M2002-01025-COA-R3-CV, 2002 WL 31425791 (Tenn. Ct. App. Oct. 30, 2002); ***Hooker v. McWherter***, No. 98-2246-III (July 31, 1998), ***cited in Hooker v. Sundquist***, 107 S.W.3d 532, 534-35 (Tenn. Ct. App. 2002). Pursuant to Rule 11 of the Tennessee Rules of Civil Procedure, the defendants also sent to Mr. Hooker, but did not file in the trial court, a motion for sanctions, asserting that the amended complaint was both legally and factually frivolous in violation of Tennessee Rule of Civil Procedure 11.02(2) and (3).[2] Mr. Hooker, of course, did not voluntarily

---

[1]For a more detailed history of the proceedings in this lawsuit, see ***Hooker v. Sundquist***, 107 S.W.3d 532 (Tenn. Ct. App. 2002).

[2]Rule 11.02 provides in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–

> * * *

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

dismiss the lawsuit. On February 8, 2002, the trial court granted the defendants' motion to dismiss, finding that Mr. Hooker's complaint presented no legal or factual basis for relief. Thereafter, the defendants filed in the trial court the motion for sanctions that had been previously sent to Mr. Hooker. After a hearing, the trial court denied the defendants' motion for sanctions, holding that "the chilling affect [sic] on the average citizens of this state so greatly outweighs the inconvenience that's associated with this lawsuit that I cannot see that sanctions are appropriate." On April 1, 2002, the trial court entered an order incorporating that ruling.

The defendants appealed the denial of their motion for sanctions to this Court. On December 19, 2002, this Court issued a decision finding that Mr. Hooker's "belief that his complaint was 'well-grounded in both fact and law' [was] an unreasonable one" and remanded the cause for the issuance of an appropriate sanction.[3] *Hooker v. Sundquist*, 107 S.W.3d 532, 537 (Tenn. Ct. App. 2002).

On remand, the trial court held a hearing at which the parties were given an opportunity to argue the issue of sanctions. At the hearing, the defendants sought the imposition of nonmonetary sanctions that would curb the repetitive lawsuits filed by Mr. Hooker. Mr. Hooker argued that any award of sanctions against him for filing lawsuits to protect the Tennessee Constitution was unwarranted, and that such lawsuits should not be limited by the courts. On June 27, 2003, the trial court entered an order issuing sanctions against Mr. Hooker. The trial court held that "[i]n order to protect Mr. Hooker's ability to have meaningful access to the courts while preventing needlessly repetitive or frivolous litigation" the following sanction was warranted:

> First, Mr. Hooker shall pay all outstanding court costs associated with any previous filings in which he is the plaintiff that have been dismissed. He shall not be allowed to file any further complaints in Circuit or Chancery Court for the 20th Judicial Division against the State of Tennessee and/or any elected officials, either in their individual or official capacity, in which he is plaintiff, until such costs are paid.

> Second, any complaint filed by Mr. Hooker within the next twenty-four (24) months in any of the State Trial Courts of the 20th Judicial Division, shall be submitted by the Clerk to the Special Master of the Circuit Court who shall determine:

---

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

[3] On January 10, 2003, Hooker filed an application for permission to appeal with the Supreme Court of Tennessee pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure. The Supreme Court denied that application on March 10, 2003.

1.      Whether the complaint alleges violations of Article X
        Section 3 of the Tennessee Constitution and/or
        Section 2-19-126, T.C.A., and

2.      Whether such filings are legally frivolous and/or are
        merely duplicative of matters already litigated.

The Special Master will then provide a written report reflecting those findings to the Presiding Judge of the Davidson County State Trial Courts with copies to Mr. Hooker, his counsel and all named defendants. In this report the Special Master shall recommend whether the complaint should proceed or be dismissed. No answer or responsive pleading shall be required unless the complaint is allowed to proceed and the time for filing such responsive pleading shall commence to run upon filing of said report. If Mr. Hooker and/or any of the named defendants are dissatisfied with the determination by the Special Master they may request that the Presiding Judge review the report by filing a motion seeking relief within ten (10) days of entry of the report; otherwise, the report may be adopted by the Presiding Judge without hearing.

Thus, the trial court imposed a screening mechanism for two years during which any complaint filed by Mr. Hooker in state trial court must be submitted by the clerk of the court to a special master. According to the order, the special master must then determine whether Mr. Hooker's new lawsuit is frivolous or duplicative of other lawsuits previously filed by him. The trial court noted that it was "reluctant to impose any sanction that would create a barrier that denies the right of citizens to challenge the interpretation of our Constitution, statutes and case law." The trial court observed, however, that "endless litigation over the same subject is detrimental to our society. . . . An unsuccessful litigant should not be allowed to keep filing the same lawsuit in different courts hoping to obtain a different result on a settled point of law." Therefore, to balance Mr. Hooker's interest in having meaningful access to the courts with the potential harm of endless repetitive litigation, the trial court concluded that the specially-tailored screening mechanism would be an appropriate sanction.

Mr. Hooker filed a timely motion to alter or amend the order on sanctions.[4] The trial court held a hearing on the matter, at which Hooker argued that the trial court did not have jurisdiction to prevent him from filing lawsuits to challenge constitutional violations.[5] On July 25, 2003, the trial

_____

[4]The record reflects that the motion was received by the defendants on July 10, 2003, but was actually filed in the trial court on July 25, 2003, the same day on which the trial court ruled on the motion. In any event, the motion to amend was timely under Tennessee Rule of Civil Procedure 59.04.

[5]At the hearing, Mr. Hooker represented to the trial court that he had filed over 13 lawsuits and spent over $25,000 of his own funds challenging the "meat and drink" practices of elected officials, which proceedings have been ongoing for over 9 years.

-4-

court entered an order denying the motion to alter or amend, maintaining that "this restrictive sanction appears to be the only means of curbing these repetitive filings." From that order, Mr. Hooker now appeals.

On appeal, Hooker argues that the sanction imposed was unconstitutional, because it deprives him of his right to defend the integrity of the Tennessee Constitution in violation of Article I, sections 1, 2, 17, 19, and Article XI, section 16 of the Tennessee Constitution.[6] He asserts that, if

---

[6]The provisions on which Mr. Hooker relies read as follows:

> All power inherent in the people – Government under their control. – That all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper.

Tenn. Const. art. I, § 1.

> Doctrine of nonresistance condemned. – That government being instituted for the common benefit, the doctrine of non-resistance against arbitrary power and oppression is absurd, slavish, and destructive of the good and happiness of mankind.

Tenn. Const. art. I, § 2.

> Open courts – Redress of injuries – Suits against the State. – That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

Tenn. Const. art. I, § 17.

> Freedom of speech and press. – That the printing presses shall be free to every person to examine the proceedings of the Legislature, or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty. But in prosecutions for the publication of papers investigating the official conduct of officers, or men in public capacity, the truth thereof may be given in evidence; and in all indictments for libel, the jury shall have a right to determine the law and the facts, under the direction of the court, as in other criminal cases.

Tenn. Const. art. I, § 19.

> Bill of rights to remain inviolate. – The declaration of rights hereto prefixed is declared to be a part of the Constitution of this State, and shall never be violated on any pretence whatever. And to guard against transgression of the high powers we have delegated, we declare that everything in the bill of rights contained, is excepted out of the General powers of government, and shall forever remain inviolate.

Tenn. Const. art. XI, § 16.

Rule 11 sanctions are permitted to be used to interfere with a citizen's right to protect the Constitution, then the Constitution will be destroyed and the concept that "all power is inherent in the people" will be replaced with the notion that the judiciary has the power to prohibit a citizen from exercising his constitutional rights. In response, the defendants argue that the trial court acted well within its authority in imposing the screening mechanism as a sanction against Mr. Hooker. They note that the sanction does not deny Mr. Hooker access to the courts or the exercise of his free speech rights, but rather, it simply ensures that his future lawsuits for a two-year period are not repetitive or frivolous, relieving future defendants during that period from having to respond to repetitive, frivolous lawsuits and conserving scarce judicial resources.

As previously indicated, our prior decision directed the trial court to impose Rule 11 sanctions against Mr. Hooker, so the decision of whether to impose sanctions is not at issue. In this appeal, Mr. Hooker challenges the nature and extent of the sanction imposed. Where a sanction is mandatory, the nature and extent of the sanction is discretionary with the trial court. *See Andrews v. Bible*, 812 S.W.2d 284, 288 (Tenn. 1991) (quoting *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D. Ky. 1987)). Under that standard, the trial court's decision is reviewed to determine "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Mercer v. Vanderbilt University, Inc.*, No. M2000-00801-COA-R3-CV, 2002 WL 31728864, at *10 (Tenn. Ct. App. Dec. 5, 2002). The trial court's decision is set aside only when it has misconstrued or misapplied the controlling legal principles or has acted in a manner that is inconsistent with the weight of the evidence. *White v. Vanderbilt University*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

Mr. Hooker does not challenge the factual basis for the trial court's sanction in this case. Rather, the crux of Mr. Hooker's argument is that the screening mechanism imposed against him violates his constitutional rights. He acknowledges having filed a series of lawsuits asserting violations of Article X, section 3 and Tennessee Code Annotated § 2-19-126, and that various courts, including this Court, have declined to accept his interpretation of those laws. He claims, however, that these lawsuits were filed in order to protect the Constitution, and that the screening mechanism fashioned by the trial court is unconstitutional because his unfettered right to pursue those actions is "unalienable" and "indefeasible." Mr. Hooker cites no case in which such a screening mechanism was held to be unconstitutional or inappropriate under similar circumstances.

Rule 11 provides a guideline for determining the appropriate sanction in a given case, stating that the sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Tenn. R. Civ. P. 11.03(2). The "sanction may consist of, or include, directives of a nonmonetary nature . . . ." *Id.* This Court has held that it is impermissible to issue an injunction that completely bars a litigant from filing an action in court. *See Ali v. Moore*, 984 S.W.2d 224, 230 (Tenn. Ct. App. 1998). The imposition of such an absolute restriction would violate the open courts provision of the Tennessee Constitution, which provides:

That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay . . . .

Tenn. Const. art. I, § 17; *see Ali*, 984 S.W.2d at 230.

Imposing prelitigation restrictions, however, serves "Rule 11's goal of deterring abuse in the litigation process by providing guidance concerning the procedures and standards utilized in the imposition of Rule 11 sanctions." *Andrews v. Bible*, 812 S.W.2d 284, 292 (Tenn. 1991). In *Andrews*, the Tennessee Supreme Court held that an attorney does not have a continuing obligation under Rule 11 to take remedial action if it is later discovered that his pleadings are factually or legally meritless. *Id.* at 291. In reaching its conclusion, the Court observed:

> To be sure, this Court views Rule 11 as a potent weapon that can and should be used to curb litigation abuses that from time to time plague the dockets of our trial courts. Invoked properly, Rule 11 can confer great benefits on all concerned. If abused, Rule 11 may chill an attorney's enthusiasm and stifle the creativity of litigants in pursuing novel factual and legal theories. As a result, the legal system as a whole will suffer.

*Id.* at 292. Thus, Rule 11 sanctions imposed should be limited so as to protect the rights of the litigant, but sufficient to protect the judicial system by curbing repetitive, frivolous, or vexatious litigation.[7]

Federal courts have consistently upheld prefiling restrictions on a litigant's right to initiate a lawsuit in order to curb repetitive, frivolous, or vexatious litigation. In *In re Martin-Trigona*, 9 F.3d 226 (2d Cir. 1993), the Second Circuit Court of Appeals discussed the need for the variety of techniques adopted by courts to prevent litigation abuses. The appellate court reasoned:

> The Supreme Court and numerous courts of appeals have recognized that courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities. . . . Some courts have responded to vexatious litigants by completely foreclosing the filing of designated categories of cases. . . . Alternatively, courts have adopted the less drastic remedy of subjecting a vexatious litigant to a "leave of court" requirement with respect to future filings. . . . State courts have also fashioned exceptions to their normal litigation procedures in response to vexatious litigants.

---

[7]The decision in the prior appeal of this case concluded that the complaint filed by Mr. Hooker was not well-grounded in law or fact, because the issues involved were "no different" than in other cases filed by Mr. Hooker in which his constitutional arguments were rejected. *See Hooker*, 107 F.3d at 537. That conclusion is the law of the case.

***Martin-Trigona***, 9 F.3d at 228-29 (citations omitted).  The Second Circuit cited several cases in which federal appellate courts upheld district court orders imposing filing restrictions on litigants.  ***Id.*** at 229 (citing ***In re Burnley***, 988 F.2d 1, 3-4 (4th Cir. 1992) (approving district court's order imposing pre-filing review system on litigant); ***Ketchum v. Cruz***, 961 F.2d 916, 921 (10th Cir. 1992) (upholding district court's order requiring litigant to obtain leave of court to proceed *pro se* in any further litigation); ***Cofield v. Alabama Pub. Serv. Comm'n***, 936 F.2d 512, 518 (11th Cir. 1991) (upholding district court's order requiring pre-filing approval of all litigants' pleadings); ***Chipps v. U.S. Dist. Court for Middle Dist. of Penn.***, 882 F.2d 72, 73 (3d Cir. 1989) (modifying district court's order to require court permission for litigant's subsequent filings concerning particular dispute); ***In re Davis***, 878 F.2d 211, 211-13 (7th Cir. 1989) (upholding order requiring district court's five-judge Executive Committee to review all documents submitted by litigant to determine if matter should be filed); ***Urban v. United Nations***, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (enjoining pro se litigant from filing any civil action in any federal court without first obtaining leave of the forum court)).

In ***Ortman v. Thomas***, 99 F.3d 807, 811 (6th Cir. 1996), the Sixth Circuit Court of Appeals found that imposing an absolute bar on a litigant in order to prevent the filing of repetitive, frivolous and vexatious lawsuits was too broad and, thus, was impermissible.  The court stated, however, that prefiling *limitations* would be permissible.  "[I]t is permissible to require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." ***Ortman***, 99 F.3d at 811.  Similarly, in ***Feathers v. Chevron U.S.A., Inc.***, 141 F.3d 264 (6th Cir. 1998), the appellant challenged pre-filing restrictions imposed on him and others, stating that the restrictions constituted an impermissible bar on future lawsuits.  The appellate court disagreed, however, and held that the restrictions "merely imposed a conventional prefiling review requirement." ***Feathers***, 141 F.3d at 269.  The appellate court stated that "[t]here is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." ***Id.***

In this case, the screening mechanism imposed by the trial court was narrowly tailored and short in duration, effectively curbing for a defined period of time any repetitive or frivolous lawsuits filed by Mr. Hooker, and was fully warranted given Mr. Hooker's undisputed history of filing such lawsuits.  The screening mechanism does not prevent Mr. Hooker from filing another lawsuit.  It prevents him only from relitigating essentially the same lawsuit.  This Court has great respect for the need to litigate novel interpretations of the constitutional and statutory provisions, and has respect as well for the sincerity of Mr. Hooker's beliefs.  This Court must also respect the need for other litigants to have the courts hear their lawsuits, such as the mother whose parental rights are being terminated, the paraplegic who seeks compensation from a wrongdoer for his injuries, the divorced father who seeks custody of his child, the business owner who feels he has been wrongly taxed by his government, the prisoner who alleges abuse by prison officials.  With deference to the nobility of Mr. Hooker's cause, other litigants have causes that are noble and needs that are great, and all are entitled to a full and fair and impartial hearing.  This cannot be accomplished if any litigant, regardless of his cause, is permitted to glut the judicial system by filing essentially the same lawsuit

over and over as long as there is breath in his body. Having received a full and fair hearing and an adverse decision, all, including Mr. Hooker, must stand down and accept the finality of the Court's decision.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant John Jay Hooker, and his surety, for which execution may issue, if necessary.


_____
HOLLY M. KIRBY, JUDGE