# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 13, 2005 Session

## JOHN JAY HOOKER v. PHIL BREDESEN, ET AL.

### Appeal from the Chancery Court for Davidson County
No. 04-405-III    Ellen Hobbs Lyle, Chancellor

---

### No. M2004-02185-COA-R3-CV - Filed October 25, 2005

---

Defendants appeal the refusal of the Chancellor to impose Tennessee Rule of Civil Procedure 11 sanctions against Plaintiff. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

WILLIAM B. CAIN, J., delivered the opinion of the court. PATRICIA J. COTTRELL, J., filed an opinion dissenting in part and concurring in part. FRANK G. CLEMENT, JR., J., filed a separate concurring opinion.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Janet M. Kleinfelter, Sr. Counsel, for the appellants, Phil Bredesen, Paul Summers Riley Darnell and Brook Thompson.

John Jay Hooker, Nashville, Tennessee, pro se.

### MEMORANDUM OPINION[1]

Plaintiff, in his long-standing crusade to cleanse the election process in Tennessee, brings yet another complaint challenging the constitutionality of the Southern Regional Presidential Convention Delegate Act of 1986 (Tenn.Code Ann. § 2-13-301 *et seq.*) on the grounds that it does not provide for a prohibition against the use of out-of-state campaign contributions in the presidential preference primary. He insists that such out-of-state contributions are unconstitutional under Article 1 section

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

8 of the Tennessee Constitution and under the Fifth and Fourteenth Amendments to the Constitution of the United States.

The Chancery Court of Davidson County dismissed the action for lack of subject matter jurisdiction on the basis that the issue of interstate campaign contributions in the residential preference primary was preempted by the Federal Election Campaign Act, 2 U.S.C. § 453. Defendants then filed a Motion for Sanctions under Tennessee Rule of Civil Procedure 11.03 asserting that Plaintiff's Complaint was legally frivolous, which Motion was denied by the Chancellor.

Defendants appeal asserting that the refusal of the trial court to impose Tennessee Rule of Civil Procedure 11 sanctions against Plaintiff was an abuse of discretion.

Appellee asserts that the trial court erred in dismissing his Complaint.

Because of the repeated number of lawsuits filed by appellee, Mr. Hooker, challenging various facets of the campaign financing system in Tennessee (or lack of such system), the Davidson County Circuit Court on June 27, 2003, in the case of *Hooker v. Sundquist*, No. 01C3804, (Davidson Cty. Circuit Ct.) set up what might be called a "fail-safe" screening systems of lawsuits filed by Mr. Hooker which system was to be followed prior to defendants being required to answer or further plead to the complaint.

The Complaint at bar was filed on February 6, 2004, and on February 10, 2004, the trial court entered an order providing:

> The Tennessee Court of Appeals, Middle Section, ordered the courts of Davidson County to implement measures to address the Plaintiff's repeated filing of lawsuits challenging clearly settled points of law.

> To maintain the Plaintiff's meaningful access to the courts but to prevent frivolous litigation, the Presiding Judge of Davidson County, the Honorable Thomas W. Brothers, entered an order on June 27, 2003, establishing a preliminary review of any lawsuit filed by the Plaintiff. Before the parties sued are required to defend, the Plaintiff's lawsuit is reviewed by the Special Master of the Circuit Court on two specific grounds set forth in Judge Brothers' order. The Special Master is required to prepare a written report of findings. Also provided is a procedure for review of the findings by the Presiding Judge.

> It is therefore ORDERED, pursuant to the order of June 27, 2003, entered by Thomas W. Brothers, Presiding Judge of the Twentieth Judicial District, that the above-captioned matter is submitted to the Special Master of the Circuit Court to determine whether the complaint alleges violations of Article X, section 3 of the Tennessee Constitution and/or Section 2-19-126, Tennessee Code Annotated, and

whether such filings are legally frivolous and/or merely duplicative of matters already litigated.

On February 18, 2004, Special Master Mary Ashley Nichols filed her report providing:

> This lawsuit was filed February 6, 2004 in the Chancery Court for Davidson County by John Jay Hooker, Esq. This matter comes before the Special Master for review upon a directive from the Sixth Circuit Court for Davidson County in an order arising out of *Hooker v. Sundquist*, Davidson County Circuit Court No: 01C3804 entered June 27, 2003. The order instructed the Special Master to review any complaint filed by Mr. Hooker during a 24-month period to determine:
>
> 1. Whether the complaint alleges violations of Article X Section 3 of the Tennessee Constitution and/or Tennessee Code Annotated Section 2-19-126 and
> 2. Whether such filings are legally frivolous and/or merely duplicative of matters already litigated.
>
> The Special Master finds that the lawsuit filed by Mr. Hooker does not allege violations of Article X Section 3 of the Tennessee Constitution nor of Tennessee Code Annotated Section 2-19-126. Further review is not required due to the limited scope of the 2003 order.
>
> The Special Master recommends that the lawsuit at bar proceed.

Plaintiff then filed his Amended Complaint on February 20, 2004, asserting that the Presidential Preference Primary Law (Tenn.Code Ann. § 2-13-301 *et seq.*) was unconstitutional because:

> The Tennessee legislature has no power to authorize out-of-state campaign contributions and must prohibit the use of said contributions in the election process under the mandates of Tennessee Constitution Article I, Sections 1, 4, 5 & 8, Article IV, Article XI, Section 16, and T.C.A. 2-2-102; consequently, the election should be held to be void.

No appeal to the Chancellor was perfected from the report of the Special Master, but on March 5, 2004, Defendants filed their Motion to Dismiss for lack of subject matter jurisdiction.

On April 5, 2004, the trial court entered an Order Granting the Defendants' Motion to Dismiss the case for lack of subject matter jurisdiction and for failure to state a claim for upon which relief could be granted.

Defendants' filed a Motion for Rule 11 sanctions to be imposed against Plaintiff which Motion was heard on April 30, 2004, resulting in a Memorandum and Order of the trial court providing:

> Prior to the filing of this lawsuit, the Tennessee Court of Appeals, Middle Section, directed the Honorable Thomas W. Brothers to conduct a hearing to sanction the plaintiff, John Jay Hooker. The problem which the Court of Appeals sought for Judge Brothers to address was to prevent the plaintiff from filing frivolous litigation and claims duplicative of matters already litigated.
>
> On June 27, 2003, Judge Brothers entered an order establishing in the courts of Davidson County a preliminary review of any lawsuit filed by the plaintiff. Before parties sued by Mr. Hooker are required to defend, the plaintiff's lawsuit is reviewed by the Special Master of the Circuit Court of Davidson County. The Special Master is required to prepare a written report of findings. Also provided is a procedure for review of the findings by the Presiding Judge. The Special Master is required to determine whether the complaint alleges violations of Article X, section 3 of the Tennessee Constitution and/or section 2-19-126, Tennessee Code Annotated, and whether such filings are legally frivolous and/or are merely duplicative of matters already litigated.
>
> After the entry of Judge Brothers' June 27, 2003 order, this lawsuit was filed by Mr. Hooker. By order of April 5, 2004, the Court granted the defendants' motion to dismiss this matter based on prior rulings of this and superior courts.
>
> This matter is presently before the Court on the motion of the Attorney General for the Court to impose sanctions on Mr. Hooker for filing the above-captioned matter. The Attorney General asserts that the filing of this case is duplicative of matters already litigated and is, therefore, frivolous. The Court agrees with the Attorney General that the filing of this case is duplicative of matters already settled and litigated by rulings of superior courts.
>
> The difficulty with the motion of the Attorney General is that this Court, prior to requiring a responsive pleading to be filed in the case, followed the order put in place by Judge Brothers and referred this case to the Special Master to determine whether the case should proceed. The Special Master allowed the case to proceed, stating, "The Special Master finds that the lawsuit filed by Mr. Hooker does not allege violations of Article X, Section 3 of the Tennessee Constitution nor of Tennessee Code Annotated section 2-19-126. Further review is not required due to the limited scope of the 2003 order. The Special Master recommends that the lawsuit at bar proceed."
>
> The Attorney General argues that the Special Master only made a determination that the complaint in this matter did not allege a violation of Article

-4-

X, section 3 or Tennessee Code Annotated section 2-19-126 and, for that reason, is not indicative of whether the plaintiff has violated Rule 11 of the Tennessee Rules of Civil Procedure by improperly filing a matter to harass, delay or that is not warranted by existing law. Moreover, although it is not made clear in the motion or papers filed by the Attorney General, the Court understands from the oral argument that the sanction that the Attorney General seeks is for this Court to broaden the inquiry the Special Master makes in determining whether to recommend that Hooker lawsuits proceed. The Attorney General seeks for this Court to charge the Special Master to determine from the outset of a Hooker filing whether the new lawsuit is duplicative of matters already litigated even if the new lawsuit does not explicitly invoke Article X, section 3 or Tennessee Code Annotated section 2-19-126.

. . .

But, even putting aside whether this Court has the power and authority to impose a sanction on the filing of lawsuits in other courts in Davidson County, this Court must on other grounds deny the motion for sanctions. While it is true that the report of the Special Master in this matter appears to have allowed this lawsuit to proceed because it was not explicitly brought to address a violation of Article X, section 3 or Tennessee Code Annotated section 2-19-126, nevertheless the fact is that the Special Master recommended that the case proceed. Moreover, the Attorney General did not petition the Presiding Judge to review that recommendation. Mr. Hooker was given the "green light" by the Special Master to proceed and the defendants did not take that determination before the presiding judge as is provided for in Judge Brothers' order.

A sanction under Rule 11 is a penalty. This Court concludes that a penalty is not appropriate in this case given the ambiguity created by the determination by the Circuit Court Special Master that this case could proceed and the failure of the Attorney General to petition the Presiding Judge to halt the proceedings at that time. The motion for sanctions, therefore, is denied.

Recognizing the need to deter the plaintiff from filing lawsuits not only under Article X, section 3 or Tennessee Code Annotated section 2-19-126 but to also deter the plaintiff from filing lawsuits that are duplicative of matters already litigated, the Court has studied whether it has any legal authority to enter such an injunctive order. The Court has concluded that its only authority to enter an order that would preclude the plaintiff, prospectively, from filing such lawsuits is pursuant to Rule 11. Having concluded above that Rule 11 sanctions are not appropriate in this case because of the ambiguity created by the recommendation of the Special Master that the case could proceed, this Court does not have the authority to enter an order prospectively regulating Mr. Hooker's filings in Davidson County. The Court concludes that the remedy of the Attorney General in Davidson County for future filings by Mr. Hooker

in lawsuits which do not explicitly allege violations of Article X, section 3 of the Tennessee Constitution and/or section 2-19-126, is pursuant to the June 27, 2003 order of Judge Brothers, to request the presiding judge, when the new lawsuit is filed, to review the report of the Special Master and dismiss the case because it is legally frivolous or merely duplicative of matters already litigated even though it is not an Article X, section 3 or section 2-19-126 case.

It is therefore ORDERED that the motion for sanctions is denied.

The difficulty facing the defendants and the Chancellor on this issue of sanctions has its backdrop in *Hooker v. Sundquist*, 150 S.W.3d 406 (Tenn.Ct.App.2004). In the history of that case, the trial court had denied imposition of sanctions which action had been reversed by the Court of Appeals. *Hooker v. Sundquist*, 107 S.W.3d 532 (Tenn.Ct.App.2002). On remand of that case the Circuit Court implemented the "fail-safe" procedure that is at issue in the case at bar. Mr. Hooker then appealed, and this Court held in part:

> Thereafter, the defendants filed in the trial court the motion for sanctions that had been previously sent to Mr. Hooker. After a hearing, the trial court denied the defendants' motion for sanctions, holding that "the chilling affect [sic] on the average citizens of this state so greatly outweighs the inconvenience that's associated with this lawsuit that I cannot see that sanctions are appropriate." On April 1, 2002, the trial court entered an order incorporating that ruling.

> The defendants appealed the denial of their motion for sanctions to this Court. On December 19, 2002, this Court issued a decision finding that Mr. Hooker's "belief that his complaint was 'well-grounded in both fact and law' [was] an unreasonable one" and remanded the cause for the issuance of an appropriate sanction. *Hooker v. Sundquist*, 107 S.W.3d 532, 537 (Tenn.Ct.App.2002).

> On remand, the trial court held a hearing at which the parties were given an opportunity to argue the issue of sanctions. At the hearing, the defendants sought the imposition of nonmonetary sanctions that would curb the repetitive lawsuits filed by Mr. Hooker. Mr. Hooker argued that any award of sanctions against him for filing lawsuits to protect the Tennessee Constitution was unwarranted, and that such lawsuits should not be limited by the courts. On June 27, 2003, the trial court entered an order issuing sanctions against Mr. Hooker. The trial court held that "[i]n order to protect Mr. Hooker's ability to have meaningful access to the courts while preventing needlessly repetitive or frivolous litigation" the following sanction was warranted:

>> First, Mr. Hooker shall pay all outstanding court costs associated with any previous filings in which he is the plaintiff that have been dismissed. He shall not be allowed to file any further complaints in

Circuit or Chancery Court for the 20th Judicial Division against the State of Tennessee and/or any elected officials, either in their individual or official capacity, in which he is plaintiff, until such costs are paid.

Second, any complaint filed by Mr. Hooker within the next twenty-four (24) months in any of the State Trial Courts of the 20th Judicial Division, shall be submitted by the Clerk to the Special Master of the Circuit Court who shall determine:

1. Whether the complaint alleges violations of Article X Section 3 of the Tennessee Constitution and/or Section 2-19-126, T.C.A., and

2. Whether such filings are legally frivolous and/or are merely duplicative of matters already litigated.

The Special Master will then provide a written report reflecting those findings to the Presiding Judge of the Davidson County State Trial Courts with copies to Mr. Hooker, his counsel and all named defendants. In this report the Special Master shall recommend whether the complaint should proceed or be dismissed. No answer or responsive pleadings shall be required unless the complaint is allowed to proceed and the time for filing such responsive pleading shall commence to run upon filing of said report. If Mr. Hooker and/or any of the named defendants are dissatisfied with the determination by the Special Master they may request that the Presiding Judge review the report by filing a motion seeking relief within ten (10) days of entry of the report; otherwise, the report may be adopted by the Presiding Judge without hearing.

Thus, the trial court imposed a screening mechanism for two years during which any complaint filed by Mr. Hooker in state trial court must be submitted by the clerk of the court to a special master. According to the order, the special master must then determine whether Mr. Hooker's new lawsuit is frivolous or duplicative of other lawsuits previously filed by him. The trial court noted that it was "reluctant to impose any sanction that would create a barrier that denies the right of citizens to challenge the interpretation of our Constitution, statutes and case law." The trial court observed, however, that "endless litigation over the same subject is detrimental to our society . . . . An unsuccessful litigant should not be allowed to keep filing the same lawsuit in different courts hoping to obtain a different result on a settled point of law." Therefore, to balance Mr. Hooker's interest in having meaningful access to the courts with the potential harm of endless repetitive litigation, the trial court concluded that the specially-tailored screening mechanism would be an appropriate sanction.

*Hooker v. Sundquist*, 150 S.W.3d at 409-10.

The difficulty with faulting the Chancellor for refusing to impose sanctions in the case at bar is that it is plain from the report of the Special Master of February 18, 2004, that after reciting both the provision regarding Article X Section 3 of the Tennessee Constitution together with Tennessee Code Annotated section 2-19-126 and the provision relative to legally frivolous or duplicative lawsuits, the Special Master specifically ruled only on the constitutional and statutory provisions without ever addressing the issue of frivolous or duplicative matters. The Special Master said only, "further review is not required due to the limited scope of the 2003 order."

The same June 27, 2003, "fail-safe" order provides:

> If Mr. Hooker and/or any of the named defendants are dissatisfied with the determination by the Special Master they may request that the Presiding Judge review the report by filing a motion seeking relief within ten (10) days of entry of the report; otherwise, the report may be adopted by the Presiding Judge without hearing.

*Hooker*, 150 S.W.3d at 409-10.

The record indicates that no party appealed the action of the Special Master nor in any way challenged the recommendation of the Special Master that "the lawsuit at bar proceed."

If the defendants were dissatisfied with the report of the Special Master, their remedy was to appeal to the Chancellor or the Presiding Judge of Davidson County State Trial Courts. Having failed to do so, they now seek to hold the Chancellor to an abuse of discretion for refusing to impose sanctions regardless of the "fail-safe" mechanism.

This Court reviews the action of the trial court in refusing to grant Rule 11 sanctions in a particular case under an abuse of discretion standard. *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn.Ct.App.1992). We are not prepared under these circumstances to hold that the Chancellor abused her discretion.

As to the issued raised by the appellee questioning the dismissal of his Complaint, it is but a repetition of *Hooker v. Thompson*, 978 S.W.2d 541 (Tenn.Ct.App.1998) except that it addresses the laws relating to presidential preference primaries rather than elections to the United States Senate.

Nothing in the Constitution of the United States or in the Constitution of Tennessee compels the Congress of the United States or the legislature of Tennessee to prohibit the use of out-of-state campaign contributions in the election process. As we held in *Hooker v. Alexander, et al.*, No. M2003-01141-COA-R3-CV (Tenn.Ct.App. May 20, 2005):

> Superimposed upon all these issues is the necessity to determine where the ultimate power to act lies. The ideal place to begin is with that monumental work on

Constitutional Limitations by the great Judge Thomas McIntyre Cooley, former Chief Justice of the Supreme Court of Michigan and one of the truly great law writers of history. As he was quoted by the Supreme Court of Tennessee, Judge Cooley says:

> "[T]here was never a written republican constitution which delegated to functionaries all the latent powers which lie dormant in every nation, and are boundless in extent and incapable of definition." Cooley, Const. Lim. p. 37, (175.) . . .
>
> But, "in considering state constitutions, we must not commit the mistake of supposing that, because individual rights are guarded and protected by them, they must also be considered as owing their origin to them. These instruments measure the powers of the rulers, but they do not measure the rights of the governed. A constitution is not the beginning of a community nor the origin of private rights. It is not the foundation of law, nor the incipient state of government. It is not the cause, but the consequence, of personal and political freedom. It grants no rights to the people, but is the creature of their power, the instrument of their convenience, designed for their protection in the enjoyment of the rights and powers which they possessed before the constitution was made. It is but the frame-work of the political government, and necessarily based upon the pre-existing condition of laws, rights, habits, and modes of thought." Cooley, Const. Lim. p. 36, (37.)

*Dibrell v. Morris*, 15 S.W. 87, 90 (Tenn. 1891).

*Hooker v. Alexander*, 2005 WL 1212617 *2 (Tenn.Ct.App., May 20, 2005).

Without either a federal or state constitutional proviso requiring a bar to out-of-state campaign contributions, the allegations of the Complaint fail to state a cause of action, and the issues were likewise preempted by the Federal Election Campaign Act, 2 U.S.C. § 453.

The judgment of the Chancellor is in all respects affirmed with costs assessed to Appellants.

_____
WILLIAM B. CAIN, JUDGE