IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2006 Session

## JOHN JAY HOOKER v. W. FRANK CRAWFORD ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 04C-2019     Walter C. Kurtz, Judge**

---

**No. M2005-00052-COA-R3-CV  - Filed January 17, 2006**

---

This appeal involves the imposition of Tenn. R. Civ. P. 11 sanctions against a lawyer.  The lawyer filed a civil rights suit in the Circuit Court for Davidson County against five state judges seeking monetary damages to punish the judges for their judicial actions in a prior case.  The judges filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss and a motion for sanctions under Tenn. R. Civ. P. 11. The trial court granted the motion to dismiss and later imposed monetary and other sanctions against the lawyer.  The lawyer insists on this appeal that the trial court erred by imposing Tenn. R. Civ. P. 11 sanctions against him.  We have determined that the Tenn. R. Civ. P. 11 sanctions fashioned by the trial court are carefully tailored and are clearly warranted by the lawyer's conduct.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

John Jay Hooker, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Janet M. Kleinfelter, Senior Counsel, for the appellees, W. Frank Crawford, Holly M. Kirby, David R. Farmer, Alan E. Highers, and Thomas W. Brothers.

### MEMORANDUM OPINION[1]

John Jay Hooker believes that the current practices used to finance elections in Tennessee violate Article X, Section 3 of the Tennessee Constitution.  He has set out to purge the system by filing a series of pro se lawsuits against various elected officials seeking to compel them to adhere

---

[1]Tenn. Ct. App. R. 10 provides:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

to his interpretation of the Constitution or to invalidate their elections.[2] All these lawsuits have been unsuccessful. Even though every court that has considered Mr. Hooker's theories and arguments has found them to be without merit, Mr. Hooker has continued to file lawsuits advancing the same constitutional theory over and over again.[3]

After Mr. Hooker filed his fourth lawsuit based on his interpretation of Tenn. Const. art. X, § 3, the defendants requested the trial court to impose Tenn. R. Civ. P. 11 sanctions against Mr. Hooker because similar claims had been found to be without merit in three of his earlier lawsuits. While the trial court agreed that Mr. Hooker's complaint failed to state a claim upon which relief could be granted, it declined to impose Tenn. R. Civ. P. 11 sanctions against Mr. Hooker. On appeal, this court reversed the denial of Tenn. R. Civ. P. 11 sanctions after finding that Mr. Hooker knew or should have known that the grounds of his complaint were without merit. *Hooker v. Sundquist*, 107 S.W.3d at 537. We remanded the case to the trial court for the imposition of sanctions.

When the case returned to the trial court, the court imposed a conventional pre-filing screening requirement on all the lawsuits Mr. Hooker might file in the state courts in Davidson County. The order provides that for two years, all of Mr. Hooker's complaints will be reviewed by a special master to determine whether they assert violations of Tenn. Const. art. X, § 3 or Tenn. Code Ann. § 2-19-126 (2003) and whether the claims are frivolous or duplicative of matters already litigated. Mr. Hooker objected to this screening measure and challenged its constitutionality on appeal. This court upheld the trial court's sanction after finding that it was narrowly tailored, short in duration, and fully warranted by Mr. Hooker's undisputed history of filing repetitive and frivolous lawsuits. *Hooker v. Sundquist*, 150 S.W.3d 406, 413 (Tenn. Ct. App. 2004).[4]

Thereafter, Mr. Hooker filed a civil rights action in the Circuit Court for Davidson County against the trial judge who had fashioned the pre-filing screening procedure and the four appellate judges who had participated in the two opinions holding that Mr. Hooker's conduct warranted Tenn. R. Civ. P. 11 sanctions. He sought $3,000,000 from each of the judges to punish them for (1) maliciously harassing him, (2) acting beyond their jurisdiction, (3) fraudulently violating the Open Courts Clause in Tenn. Const. art. I, § 17, and (4) protecting "the corrupt system under which they have been and are elected and/or reelected."

---

[2]*See, e.g., Hooker v. Purcell*, No. M2003-03107-COA-R3-CV, 2005 WL 123482 (Tenn. Ct. App. Jan. 20, 2005), *pet. reh'g denied*, (No Tenn. R. App. P. 11 application filed); *Hooker v. Bredesen*, 114 S.W.3d 539 (Tenn. Ct. App. 2002); *Hooker v. Sundquist*, 107 S.W.3d 532 (Tenn. Ct. App. 2000); *Hooker v. McWherter*, No. 98-2246-III (Davidson Ch. July 31, 1998).

[3]In fact, during the oral argument of this case, Mr. Hooker stated that he intended to continue to file lawsuits based on Tenn. Const. art. X, § 3.

[4]The screening process is now in place, and it has not completely barred Mr. Hooker's access to the courts. *See, e.g., Hooker v. Bredesen*, No. M2004-02185-COA-R3-CV, 2005 WL 2777377 (Tenn. Ct. App. Oct. 25, 2005) (No Tenn. R. App. P. 11 application filed) (affirming the decision to permit Mr. Hooker to file suit to challenge the constitutionality of the Southern Regional Presidential Delegate Act of 1986).

The defendant judges filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss and also sought Tenn. R. Civ. P. 11 sanctions. The trial court entered an order on October 6, 2004, granting the motion to dismiss after concluding that "[t]his lawsuit is based solely on the grounds that the defendant judges have made a ruling adverse to Mr. Hooker and that he is unwilling to accept the validity of the ruling . . . [or] the validity of the T.R.C.P. 11 sanction imposed upon him."[5]

The trial court then conducted a separate hearing on the request for Tenn. R. Civ. P. 11 sanctions. In an order filed on November 8, 2004, the trial court concluded that Mr. Hooker's civil rights action was "a frivolous lawsuit on top of a frivolous lawsuit on top of another frivolous lawsuit." After analyzing the frivolousness of Mr. Hooker's claims against the judges, the court observed that it was "facing an unrepentant pro se litigant who files frivolous lawsuits on top of frivolous lawsuits using the most baseless invectives in describing the defendants, and no sanctions thus imposed have been able to temper his judgment or awaken his sense of responsibility as a member of the bar." Accordingly, the trial court imposed the following four sanctions against Mr. Hooker: (1) a pre-filing screening requirement for five years regarding any lawsuits filed in the state courts in Davidson County against any official or candidate for public office; (2) $2,500 to reimburse the State of Tennessee for its attorney's fees; (3) $2,000 "for the amount of judicial resources wasted in this case;" and (4) all outstanding court costs in the case. Mr. Hooker has appealed to this court, arguing that the sanctions in the November 8, 2004 are unwarranted and unconstitutional.[6]

The imposition of Tenn. R. Civ. P. 11 sanctions is within the discretion of the trial court. *Stigall v. Lyle*, 119 S.W.3d 701, 706 (Tenn. Ct. App. 2003); *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992). While the Tennessee Supreme Court has pointed out that these sanctions are "a potent weapon that can and should be used to curb litigation abuses," it has also cautioned that the courts should employ these sanctions with "utmost care." *Andrews v. Bible*, 812 S.W.2d 284, 292 (Tenn. 1991). The test for deciding whether a lawyer's conduct is sanctionable is one of "objective reasonableness under all the circumstances," and the reasonableness of a lawyer's actions must be assessed in light of the circumstances existing when he or she signed the document in question. *Andrews v. Bible*, 812 S.W.2d at 288.

No reasonable lawyer, no matter how profoundly he or she might disagree with the a court's ruling, could have believed that a civil rights lawsuit seeking punitive damages from judges for doing their job would survive a Tenn. R. Civ. P. 12.02(6) motion. Accordingly, the trial court correctly determined that Mr. Hooker did not make an objectively reasonable pre-filing inquiry into the factual or legal basis of his complaint against the state judges. Further, in light of Mr. Hooker's conduct in this case and his announced determination to continue engaging in similar conduct in the future, the nature and extent of the sanctions imposed by the court are tempered and proportionate.

---

[5]Following the entry of this order, Mr. Hooker requested the trial judge to recuse himself. The trial court declined to step aside.

[6]During the oral argument before this court, Mr. Hooker undertook to raise another issue regarding the obligation of the Attorney General and Reporter to inform him of the existence of a publicly available Attorney General's opinion that had been released in 2002. This opinion has no relevance with regard to the legal validity of the Tenn. R. Civ. P. 11 sanctions contained in the trial court's November 8, 2004 order.

The majestic promise in Tenn. Const. art I, § 17 that Tennessee's courts will be open does not bestow on litigants a license to abuse the judicial process. Frivolous litigation drains the judiciary's limited resources, *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 3, 113 S. Ct. 397, 398 (1992), and harms the other litigants who have meritorious claims. *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 185 (7th Cir. 1995). Thus, we repeat what we have said before that "[h]aving received a full and fair hearing and an adverse decision, all, including Mr. Hooker, must stand down and accept the finality of the Court's decision." *Hooker v. Sundquist*, 150 S.W.3d at 414.

Mr. Hooker's regrettable and unwarranted invectives against the judiciary and other elected officials are not the cause of his present predicament.[7] He has been and will continue to be sanctioned under Tenn. R. Civ. P. 11 because he has ignored the advice to stand down and has proclaimed that he intends to continue filing lawsuits based on his interpretation of Tenn. Const. art. X, § 3. In light of Mr. Hooker's conduct, the trial court was well justified in imposing both non-monetary and monetary sanctions on him.

We affirm the decision to dismiss Mr. Hooker's complaint and to impose Tenn. R. Civ. P. 11 sanctions against him. We remand the case to the trial court for whatever further proceedings may be required, and we tax the costs of this appeal to John Jay Hooker and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[7]Mr. Hooker is not the first lawyer who has used his belief in the justness of his cause as an excuse to disregard the basic rules of civility and professionalism that are the hallmarks of the practice of law. *See, e.g., State ex rel. Inman v. Brock*, 622 S.W.2d 36, 47-51 (Tenn. 1981); *Ward v. Univ. of the South*, 209 Tenn. 412, 417-19, 354 S.W.2d 246, 248-49 (1962).